In re George Edward LEE, Jr., Patricia Lynne Lee, dba Sandy Lee Farm, Debtors.

Bankruptcy No. B83–00533–Y.

United States Bankruptcy Court, N.D. Ohio.

Dec. 16, 1983.

James J. Connelly, Warren, Ohio, for debtors.

Dennis L. Carpenter, Warren, Ohio, Stuart W. Kendall, Salem, Ohio, for Warren Production Credit Ass'n.

Thomas Corroto, Youngstown, Ohio, trustee.

## FINDING AS TO EXEMPTION CLAIM

HAROLD F. WHITE, Bankruptcy Judge.

Warren Production Credit Association (hereinafter referred to as "WPCA") filed an objection on July 6, 1983 to the claim of exemptions of the debtors in Payment-in-Kind (PIK) benefits. WPCA further requested this Court to determine that it holds a valid security interest in the PIK benefits.

An evidentiary hearing was held and briefs have been filed. The Court makes the following Finding of Fact and Law based upon the testimony of the witnesses and the exhibits submitted.

## FINDING OF FACT

1. The debtors filed a voluntary petition in bankruptcy on May 18, 1983 and are the operators of a hog farm known as the "Sandy Lee Farm" in Columbiana County, Ohio.

2. The real property on which the hog farm is operated is subject to three mortgages. They are: a first mortgage to Federal Land Bank of Louisville on which approximately $90,603.95 is owed; a second mortgage to United States of America, Farmers Home Administration on which the sum of $129,887.34 is owed; and a third mortgage to Warren Production Credit Association on which the sum of $152,703.46 is owed. The third mortgage is further secured by miscellaneous farm equipment, the pig herd, and all growing crops and harvested corn and livestock feed.

3. On February 8, 1983, debtor, George E. Lee, Jr., executed a contract with the Columbiana Agricultural Stabilization and Conservation Service (hereinafter referred to as "CCC") on behalf of the Commodity Credit Corporation to participate in the 1983 Payment-In-Kind (PIK) Diversion Program. (Plaintiff's Exhibits E and F). In said contract debtor agreed that he would not plant any corn on his land during the crop year 1983. As consideration therefor, the CCC agreed to compensate debtor through Payment-In-Kind according to the formula set forth in the contract and further through some small cash payments. Said contract was officially approved by the CCC on March 18, 1983.

4. The contract consists of a page entitled "Contract to Participate In the 1983 Payment-In-Kind Diversion (PIK) Program", and Appendix to said Contract and an Addendum to the Appendix. A copy of the single page entitled contract was hand-delivered to debtor, George E. Lee, Jr., at the time that said debtor executed the contract on February 8, 1983. (Plaintiff's Exhibit F). The Appendix and Addendum to Appendix were delivered to debtor via the U.S. Postal Service following the approval of the contract on March 16, 1983 by the CCC. The Addendum to the Appendix indi-

cates on page 2 that a copy of it was sent to debtor in the mail on that date. (Plaintiff's Exhibits G and H).

5. In order to comply with the terms of the contract and the federal regulations governing the same, debtors were required to plant a cover crop on the acreage governed by the PIK program. Debtors planted timothy grass as a cover crop in late May—early June 1983. Debtor, George E. Lee, planted the grass with a hand seeder over a four-day period, twelve hours each day. Debtors spent $210.00 to purchase the seed.

6. In order to further comply with the contract and federal regulations, debtor, George Lee, Jr., mowed the grass over a four-day period in early July, 1983.

7. The PIK program also provided for diversion payments. The sum of $559.50 was paid to debtors on or about April 29, 1983. A second payment in an unknown amount was due to be paid after September 1, 1983.

8. Paul Good, Executive Director for the Agricultural Stabilization Conservation Service in Columbiana County, testified that withdrawal from the PIK program after March 18, 1983, the date that debtors' bid for the PIK program was accepted, would have resulted in an assessment of liquidated damages against debtors.

9. The debtors' benefit in PIK would be about 4,000 bushels of corn with a market value of approximately $13,560.00, less the diversion payment of $559.80 made in April 1983.

## ISSUES

The issues presented herein are: 1) whether the PIK diversion benefits are property of the estate and 2) if so, whether WPCA's security interest attaches to the same.

## LAW

It is debtors' argument that the contract which it executed on February 8, 1983 was subject to several conditions precedent, none of which had occurred prior to the filing of the petition herein. As such, debtors argue, they had no rights under the contract until these conditions had been met. Accordingly, the right to receive PIK benefits could not become property of the estate pursuant to 11 U.S.C. section 541(a). The obligations which debtors argue were conditions precedent were their duty to refrain from planting corn in 1983 and their duty to plant a cover crop on the acreage governed by the PIK contract. It should be noted that both of these obligations have been satisfied by debtors, post-petition.

Arthur Corbin in his treatise on contract law states that conditions precedent are "those facts and events occurring subsequently to the making of a valid contract that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." 3A A. Corbin, *A Comprehensive Treatise on the Rules of Contract Law,* section 628 (Rev. ed. 1960). It has been stated further that "a condition precedent is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor". S. Williston, *A Treatise on the Law of Contracts,* section 663 (3d ed. 1961). In order to be a condition precedent rather than a promise, the parties must have so intended. *Mumaw v. The Western & Southern Life Insurance Co.,* 97 Ohio St. 1, 119 N.E. 132 (1917).

In the instant case, debtors agreed to forego their right to plant corn on their farm land in 1983 and agreed instead to plant an erosion preventative crop. As consideration for these promises, debtors were to receive corn in an amount based upon a percentage of the debtors' production in previous years and were further to receive cash payments. Under the terms of the contract, a failure on the part of the debtors to carry out any of the terms of the contract, including the obligations not to plant corn, could result in the assessment of liquidated damages against debtors. (Plaintiff's Exhibit G at paragraph 14).

■ The Court finds that the contract before it was no more than a simple contract with benefits and obligations flowing to both sides, one of which obligations was debtors' duty to forego planting corn and to maintain a soil conserving crop. *In re Hamilton,* 18 B.R. 868 (Bkrtcy.D.Co.1982) at 872. To hold otherwise would be to grant debtors the ability to change their decision not to plant corn anytime up until the latest possible time when corn may feasibly be planted in Columbiana County, Ohio. Construing these obligations as conditions precedent would allow debtors to determine as late as June 1 of a particular year that due to more favorable market conditions they would plant corn. Such a reading of this contract would totally impede the stated purpose of the PIK program which was "to adjust the total national acreage" of commodities for which there is an excessive supply. 48 Fed.Reg. 9,232 (March 4, 1983) (to be codified in 7 CFR Part 770).

That the CCC believed that the terms in question were promises or obligations of the contract and not conditions precedent is evidenced by the fact that it paid to debtors the sum of $559.50 on April 28, 1983 as an advance diversion payment. This payment was made prior to the time that debtors planted timothy grass on their farm and substantially prior to the last possible date for planting corn in debtors' part of Ohio.

■ Further evidence of the fact that the terms in question were not conditions precedent but instead were promises, a breach of which would result in an assessment of damages, is paragraph 14 of the Appendix to the contract. That paragraph provided for the assessment of liquidated damages against debtors for the failure to satisfy any term contained in the contract including the terms in question. This paragraph would not have been included had the terms in question been conditions precedent; for the failure to satisfy conditions precedent does not result in breach of the underlying contract. *Dependabilt Homes, Inc. v. Haettel,* 81 Ohio App. 422, 76 N.E.2d 616, 37 Ohio Op. 251 (C.A. Franklin 1947).

The Court finds that the terms in question were not conditions precedent. As such, a valid contract was created when the CCC accepted debtors' bid in the PIK program on March 18, 1983. At that time debtors obtained inchoate rights in this contract which rights were property of their chapter 7 estate when they filed under that chapter on May 18, 1983. 11 U.S.C. section 541(a)(1).

As property of the estate, this Court must now determine the validity of debtors' claimed exemption in the PIK benefits. This requires the Court to decide whether WPCA's security interest extends to the benefits. If so, then Ohio law will not permit debtors to claim any exemption in the benefits except to the extent that there is equity in the same. Ohio Revised Code section 2329.661.

WPCA introduced into evidence at the hearing certified copies of Financing Statements filed with the Columbiana County Recorder's Office. (Plaintiff's Exhibits B and D). The Financing Statements which were recorded respectively on March 18, 1974 and September 11, 1980 provided for a security interest in all growing crops including but not limited to corn. Additionally it was stated therein that the Financing Statement and Security Agreement was to cover "all proceeds of the sale or other disposition of any of the property described . . .". Whether the PIK benefits fall within the category of growing crops and their proceeds then is the issue at hand.

■ The PIK benefits are a substitute for the corn crop debtors normally would have planted. *In re Nivens,* 22 B.R. 287 (Bkrtcy.N.D.Tex.1982); *In re Preisser,* 33 B.R. 65, 10 B.C.D. 1306 (Bkrtcy.D.Co.1983). As any corn or proceeds of corn grown on debtors' farm would have been covered by the security interest held by WPCA, its substitute—the benefits under the PIK program—should be treated the same.

Debtor cites 7 CFR 770.6(f), 48 Fed.Reg. 9235 (Mar. 4, 1983) in support of his argument that these benefits are not subject to any security interest. It is therein stated that:

(f) except as provided in paragraph (e) of this section, any payment in kind or portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.

The Court finds that this regulation was adopted for the administrative convenience of the U.S. Agricultural Stabilization and Conservation Service. The regulation was not intended to affect the lien rights held by creditors of farmers taking advantage of the PIK program. *In re Preisser, supra* at 67, 10 B.C.D. at 1307. Indeed, this Court does not believe that the regulation could be applied so as to retroactively destroy lien rights obtained by creditors prior to the adoption of the regulation. *United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235, 51 U.S.L.W. 4007 (1982).

Finally, debtors rely on 11 U.S.C. section 552 for their argument that the PIK benefits are not property of the estate and are not subject to WPCA's security interest. The former argument is no more than a repetition of its primary argument regarding conditions precedent but in the context of 11 U.S.C. section 552. This argument has already been addressed and need not be further examined for 11 U.S.C. section 552 adds nothing to the argument. The second argument—relative to WPCA's security interest—must be addressed.

11 U.S.C. Section 552 provides that:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) ... if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, off-spring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

This Court has found that debtors' right to the PIK benefits was property acquired before the commencement of this case. Thus, any corn or monies received by debtors under the PIK contract post-petition are proceeds of this right.

 Debtors argue, based on this section, that the "equities" require this Court to disallow the security interest. As set forth in 4 Collier on Bankruptcy, paragraph 552.-02 (15th ed. 1983), such a disallowance may be made, at least in part, where the estate invested monies to enhance the value of the collateral. Here, the debtors invested approximately $210.00 in seed to plant the timothy grass. This planting, although it may not have enhanced WPCA's collateral, did ensure that debtors would not be assessed damages that could have resulted in a decrease in the value of WPCA's collateral. However, debtors received the sum of $559.50 under the contract with CCC on April 28, 1983. This money, which under this Court's finding was subject to WPCA's security interest, was used to purchase the seed used to plant the timothy grass and was sufficient to cover the entire cost of the planting. As such, equity does not require that this Court disallow any portion of WPCA's security interest.

The Court finds that WPCA has a valid security interest in the PIK benefits. The Court further finds that there is no equity in these benefits for debtors as approximately $152,703.46 is owed to WPCA and the PIK benefits have a value substantially less than this sum. As there is no equity in

the benefits, debtors may not claim an exemption in them.

In finding that WPCA has a valid security interest in the PIK benefits, the Court makes no finding as to the relative priorities of the various secured creditors in this asset. Debtors have argued that Federal Land Bank of Louisville has security rights superior to those held by WPCA in the benefits. Federal Land Bank of Louisville was not made a party to this motion nor has it been given an opportunity herein to argue its position in the PIK benefits. Accordingly, the Court finds that its determination that WPCA has a valid security interest in the PIK benefits should not affect any rights which Federal Land Bank of Louisville may have to the same benefits.

Therefore, it is the conclusion of this Court that the PIK benefits in question are property of the within estate. It is the further conclusion of this Court that Warren Production Credit Association has a valid security interest in the PIK benefits, subject to any valid superior security rights. The Court further concludes that debtors may not claim any exemption rights in the PIK benefits due to the security interests held against this property.