**In the Matter of Ronald Lee BINNING, Patricia Jane Binning, Debtors.**

**Bankruptcy No. 1–83–01415.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 5, 1984.

See also Bkrtcy., 24 B.R. 328.

Arthur J. Schuh, Cincinnati, Ohio, for trustee.

John C. Bauer, Cincinnati, Ohio, for debtor.

Mark Florence, Lebanon, Ohio, for movant Lebanon Production Credit Ass'n.

### ORDER RE: MOTION TO ABANDON PERSONAL PROPERTY

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 7 case is before the Court pursuant to the motion of Lebanon Production Credit Association ("LPCA") to require debtors' trustee to abandon any interest he may have in certain payments the debtor received or will receive as a participant in the U.S. Department of Agriculture's Payment-In-Kind ("PIK") and cash diversion programs.

The sole issue before the Court is whether the LPCA's security interest in the debtors' equipment, livestock, crops, and "proceeds of the sale or other disposition" of such property extends to these government entitlements.

The facts are undisputed, and may be summarized as follows: prior to the May 27, 1983 filing of their bankruptcy petition, the debtors were engaged in the business of farming. In addition to owning their own farm, debtors grew crops on land leased from other landowners.

As evidenced by certain promissory notes, on March 20, 1979 the LPCA loaned

the debtors $65,373.43, and loaned the debtors another $385,583.82 on January 14, 1981. (See Exhibits A through C attached to LPCA's motion to abandon). Through a series of security agreements, which were duly filed as financing statements, the debtors granted the LPCA a security interest in all crops grown on their farm and on the land they rented from others, as well as on certain equipment and farm machinery. (Exhibits D through F attached to LPCA's motion to abandon). The most recent security agreement, filed March 25, 1980, states that the loans are secured by "all crops of corn and soybeans." The extension sheet attached thereto states that the loans are also secured by "[a]ll crops of corn and soybeans located on the following farms in Clermont County ..." The following printed form language is set forth beneath the description on the security agreement:

7. All property similar to that listed above, which at any time may hereafter be acquired by the Debtor(s) including, but not limited to, all off-spring of livestock, additions and replacements of livestock and poultry, and replacements of and additions to equipment and other personal property above described; and all products of crops, livestock and poultry, and all feed to be used in fattening or maintaining said livestock and poultry.

8. All proceeds of the sale or other disposition of any of the property described or referred to under Items 3 to 7, inclusive above, and of any off-spring, wool, milk, poultry products and contract rights derived from said property together with all amounts receivable resulting from such sales.

In March of 1983 Ronald Binning entered into a number of contracts to participate in the Department of Agriculture's PIK and cash diversion programs. These contracts were approved by a representative of the Commodity Credit Corporation, a federally-chartered agency charged with the responsibility of administering these programs. *See,* 7 U.S.C. § 1444(h).

While the statutes and regulations governing these programs are at best arcane, the concept underlying them is a simple one. In exchange for not planting a particular crop and adhering to a conservation program as to the idle land, a participant receives payments in the form of commodities or cash. The amount of PIK payments is calculated by multiplying a set percentage of the proven crop yield times the number of acres set aside. Similarly, the land diversion payments are calculated by multiplying the set percentage of the proven crop yield times the number of acres diverted times the diversion price per bushel. *See,* 7 U.S.C. §§ 1444(e); 1445b-1(e); 7 C.F.R. Part. 713; 7 C.F.R. 770.1–770.6 (48 Fed.Reg. 1694–97 (Jan. 14, 1983), *as amended* 48 Fed.Reg. 9232–35 (March 4, 1983)).

On May 27, 1983 debtors filed their Chapter 7 petition. On September 30, 1983 the trustee filed an adversary proceeding against the debtors seeking to recover PIK payments of 25,207.81 bushels of corn and $8667.75 in diversion payments. A settlement was subsequently reached between the parties, whereby debtors retained 11,889.62 bushels of corn as reimbursement for expenses incurred in complying with the land conservation requirements of the programs, while the trustee received 13,318.9 bushels of corn plus the $8667.75 in diversion payments.

The LPCA asserts that the payments held by the trustee are covered by the after-acquired property clause in their security agreements as a substitute for "proceeds" or "contract rights" arising from the disposition of crops. The trustee counters that such a conclusion could only be reached by torturing the descriptions of collateral set forth in the security agreements, and that such a reading would violate the letter and spirit of Ohio Revised Code § 1309.08 (U.C.C. 9–110) and Ohio Revised Code § 1309.39 (U.C.C. 9–402).

█ Based on the governing case law of the Southern District of Ohio, we are constrained to rule in the trustee's favor. Sections 1309.08 and 1309.39 do not require

slavish delineation of the collateral secured. But they do require a reasonable identification of the collateral so that "reasonable further inquiry will disclose the complete state of affairs." *Ray v. City Bank and Trust Co. of Natchez, Mississippi,* 358 F.Supp. 630, 639 (S.D.Ohio 1973) (Rubin, J.). As was stated in *Cissell v. First National Bank of Cincinnati,* 471 F.Supp. 480, 486 (S.D.Ohio 1976) (Porter, J.):

> The description requirements of §§ 1309.08 ... and 1309.39 ... do not sanction a total omission of a description or a description so broad or inapplicable that the credit searcher can get no meaningful assistance from the financing statement.

These requirements generally may be fulfilled in one of two ways. The collateral may be described with sufficient particularity so that anyone reading the financing statement could identify it from the description alone; or the collateral may be described by reference to certain categories of property defined in the Code, such as "account" (1309.01(A)(15)), "general intangible" (1309.01(A)(16), "equipment" (1309.-07(B), and "farm products" (1309.07(C)). These distinct categories of property must be specifically listed in the financing statement as a prerequisite to perfection of a security interest in them. As is noted in J. White and R. Summers, *Uniform Commercial Code* 961–62 (2d ed. 1980):

> If the secured party lists "accounts" on his financing statement, and claims the debtor's tax refund in bankruptcy he will be held unperfected as to the contract rights because the description on the financing statement does not include them.

■ It is this very situation which led to the result in *Cissell,* and which leads us to hold for the trustee in this case. The security agreements simply fail to provide the reasonable identification of collateral required by the statutes and caselaw. They list crops, livestock, poultry and equipment, as well as all additions to and products of same, as collateral. They also cover all proceeds and contract rights from the sale or disposition of such property.

The PIK and land diversion payments in question certainly do not constitute "equipment," "crops," or "farm products" as defined in § 1309.07; nor do they constitute "proceeds" as defined in § 1309.25(A), since they were not generated from the "sale, exchange, collection, or other disposition of collateral or proceeds;" nor do they constitute contract rights from the sale or disposition of the collateral listed, since the debtor did not dispose of or sell anything to secure the right to payment.

■ While they might be thought of as "general intangibles" under § 1309.-01(A)(16) (*See,* Official Comment U.C.C. 9–106), we find these entitlements to fall within the category of "accounts" under § 1309.01(A)(15), since the right to payment flowed from the debtors' performance pursuant to a contract. *See,* J. White and R. Summers, *Uniform Commercial Code* 892–93 (2d ed. 1980). Since the LPCA's security agreements do not list government entitlements as collateral, either specifically or generally under the category of "accounts" or "general intangibles," their after-acquired security interest cannot be found to extend to these entitlements. *In re Kruse,* 35 B.R. 958, 966 (Bankr.D.Kan. 1983); *See also, In re Sunberg,* 35 B.R. 777 (Bankr.S.D.Iowa 1983) (PIK payments are general intangibles, and are thus subject to the PCA's security agreement which listed general intangibles as collateral).

To the extent that the cases cited by the LPCA hold that PIK diversion payments should be deemed as a substitute for crops, we respectfully disagree with those decisions. *See, In re Munger,* 495 F.2d 511 (9th Cir.1974); *In re Lee,* 11 B.C.D. 337, 35 B.R. 663 (Bankr.N.D.Ohio 1983); *In re Preisser,* 33 B.R. 65 (Bankr.D.Colo.1983); *In re Nivens,* 22 B.R. 287 (Bankr.N.D.Tex. 1982). While the United States Court of Appeals for the Sixth Circuit and the United States District Court for the Southern District of Ohio have recognized the liberal spirit underlying description requirements of the U.C.C. (*In re Richards,* 455 F.2d 281 (6th Cir.1972); *Cissell v. First National Bank of Cincinnati, supra* ) neither Court

has indicated a willingness to rewrite security agreements based on their divination of the parties' intent or to extend the coverage of a security agreement beyond the four corners of the document.

Even if we were inclined to speculate as to whether the LPCA intended to include government entitlements when it listed crops as collateral, our conclusion would be no different. Land diversion programs have been in existence in one form or another since at least 1949. As a federally-chartered instrumentality operating under the auspices of the Farm Credit Administration (12 U.S.C. § 2091 et seq.), the LPCA could hardly claim to be ignorant as to the existence and nature of these programs; nor could it claim to be unversed in drafting security agreements which adequately describe government entitlements as collateral.

For the above-stated reasons, the LPCA's motion is hereby DENIED. The foregoing shall constitute this Court's Findings of Fact, Opinion and Conclusions of Law.

IT IS SO ORDERED.