### In the Matter of WOLOSCHAK FARMS, Debtor.

### Bankruptcy No. B87–00079–Y.

United States Bankruptcy Court, N.D. Ohio.

May 15, 1987.

Douglas S. Roberts, Columbus, Ohio, for debtor.

Michael V. Demczyk, Canton, Ohio, Trustee.

Arthur I. Harris, Asst. U.S. Atty., Cleveland, Ohio, for CCC and ASCS.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

In the instant case, the Debtor has filed a Motion for Citation and Civil Contempt for alleged violations of the automatic stay in connection with the setoff of payments due the Debtor by THE COMMODITY CREDIT CORPORATION ("CCC") and/or its related agency, THE AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE ("ASCS"). A hearing was held on April 21, 1987, at which time counsel for Debtors and for CCC and ASCS appeared and presented argument in evidence.

The Debtor is a partnership engaged in dairy farming. On June 8, 1984, Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code. A Chapter 11 Plan of Reorganization was confirmed by the Court on April 23, 1985.

In the summer of 1986, Debtor apparently began experiencing some difficulty in making the required payments under the Plan. This caused one of the secured creditors to file with this Court, on January 20, 1987, a Notice of Default and Intent to Repossess. Faced with the prospect of liquidation, Debtor filed a Motion to Convert the Chapter 11 case to one under Chapter 12, or to dismiss the Chapter 11 case altogether. In conjunction therewith, Debtor filed a new Chapter 12 Petition on January 22, 1987, while the Chapter 11 case was still pending. The Chapter 11 case was dismissed by Order of this Court entered February 24, 1987. 70 B.R. 498.

At the time of filing the Chapter 12 Petition, Debtor was indebted to CCC on three (3) obligations which were apparently incurred during the Chapter 11 proceeding in the approximate amount of Fourteen Thousand & 00/100 Dollars ($14,000.00). CCC is a wholly-owned federal corporation within the U.S. Department of Agriculture. Because it has no employees, the Secretary of Agriculture has established the Agricultural Stabilization and Conservation Service to act on behalf of CCC and to administer government farm programs through state and county committee offices.

On December 23, 1986, the Debtor applied to the local ASCS Committee for payments under the special 1986 Farm Disaster Program, which was designed to reimburse farmers who had suffered from some form of natural disaster in 1986. The application was approved by the local ASCS Committee on December 30, 1986. On January 7, 1987, ASCS measured the Debtor's silage in order to arrive at the amount of Debtor's production for the 1986 year. The production was approved by the local ASCS

Committee on January 1987, and the application was thereafter sent to the Kansas City field office. Mr. Paul Good, County Executive Director for the Mahoning/Columbiana County ASCS Committee, testified that he thought that the role of the Kansas City office with regard to the 1986 disaster program was to act as a clearing house for all applications filed nationwide. Mr. Good also testified that he thought that there was nothing ASCS could do after January 8, 1987, to revoke approval of the disaster program application and that the only thing subject to change after that date was the amount of the disaster relief payment, which depended upon the total amount of claims filed nationwide.

On February 26, 1987, the local ASCS Committee received Debtor's commodity certificate for the disaster payment in the amount of Three Thousand, Seven Hundred Twenty-Five & 35/100 Dollars ($3,725.35) and on March 4, 1987, the local ASCS office set off the disaster relief payment against the amounts owed by the Debtor to CCC.

On March 17, 1987, the Debtor filed an Application with the local ACSC Committee to participate in the 1987 Acreage Reserve Program under which, in an effort to stabilize grain prices, a participating farmer agrees to limit his crop acreage to no more than a permitted amount as specified in the agreement, in return for which CCC agrees to pay to the farmer a deficiency payment. The Application was approved on March 31, 1987. On or about that date, Mr. Good informed counsel for the Debtor that while the Application had been granted, CCC would be applying the 1987 deficiency payment to the pre-Chapter 12 obligations of the Debtor. There is no dispute that actual notice of the Chapter 12 filing was given to Mr. Good by counsel for Debtor in a telephone conversation which took place on March 25, 1987. Despite counsel's suggestions to ASCS officials that any setoff would be in violation of the automatic stay, the funds were not disbursed to the Debtor until after the instant Motion for Contempt had been filed on April 1, 1987. Then, on April 3, 1987, Assistant U.S. Attorney Arthur Harris indicated to counsel for the Debtor that approximately Ten Thousand & 00/100 Dollars ($10,000.00) of the deficiency payment would be disbursed to the Debtor. He further indicated that the balance, which turned out to be approximately Nine Hundred Sixty-Six & 23/100 Dollars ($966.23) would be withheld and applied to the pre-Chapter 12 claims of the CCC upon Court approval.

A hearing on the Debtor's Motion for Contempt was held on April 21, 1987. As of that date, ASCS was still holding Nine Hundred Sixty-Six & 23/100 Dollars ($966.23) of the advance deficiency payment and the 1986 disaster relief payment in the amount of Three Thousand, Seven Hundred Twenty-Five & 35/100 Dollars ($3,725.35). At the hearing, ASCS argued that there had been no setoff with regard to the Debtor's advance deficiency payment but, rather, that ASCS was merely holding the disputed money until the Court decided whether setoff of those funds would be permitted. With regard to the disaster relief payment, ASCS argued that there was no willful violation of the automatic stay since the Debtor's right to the disaster payment had vested prior to the filing of the Chapter 12 Petition and that, therefore, under 11 U.S.C. Sec. 553, setoff was permissable.

In response, the Debtor argues that the withholding of the balance of the advance deficiency payment is a clear, willful violation of the automatic stay and that an award of damages and attorney's fees under Sec. 362(h) is appropriate. With regard to the setoff of the disaster relief payment, the Debtor argues that CCC (or ASCS) was obliged to petition the Court for relief from the automatic stay prior to the exercise of any setoff rights under Sec. 553 and that CCC's failure to obtain Court approval should be a further basis for the award of damages under Sec. 362(h). Further, the Debtor argues that the setoff of the disaster relief payment against its pre-Chapter 12 obligations to CCC was inappropriate under Sec. 553 because:

1. the disaster relief payment is a post-Petition (post-Chapter 12) obligation owing to the Debtor; and

2. there is no mutuality of obligations since the Debtor's obligations are owed to CCC, while the disaster relief payment is owed to the Debtor by ACSC.

## LAW

11 U.S.C. Sec. 553 provides:

a) Except as otherwise provided in this Section and in Sections 362 and 363 of this Title, this Title does not affect any right of the creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this Title against a claim of such creditor against the debtor that arose before the commencement of this case....

There is no doubt that the automatic stay of 11 U.S.C. Sec. 362 applies to limit, temporarily, the setoff rights of creditors in cases under the Code. "This Section preserves, with some changes, the right of setoff in bankruptcy cases now found in Sec. 68 of the Bankruptcy Act. One exception to the right is the automatic stay...." H.R.REP. No. 95–595, 95th Cong., 1st Sess. 377 (1977); S.REP. No. 95–989, 95th Cong., 2d Sess. 91–92 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877–5878, 6333. Thus, it is established that a creditor must petition the Court for relief from the automatic stay before exercising its setoff rights under Sec. 553. *United States v. Norton*, 717 F.2d 767, 773 (3d Cir.1983); *United States v. Powers*, 28 B.R. 86 (Bankr.E.D.Pa.1983). If such relief is not requested and the Debtor is subsequently injured by the acts of the creditor, an award of damages and attorney's fees may be appropriate, depending upon the circumstances. 11 U.S.C. Sec. 362(h).

■ With regard to the disaster relief payment in this case, it is the determination of this Court that the setoff was appropriate. Contrary to the assertions of the Debtor, the right to receive the disaster relief payment arose on January 8, 1987, pre-Petition, when the local ASCS Committee gave final approval on the claim and forwarded it to the Kansas City field office for processing. Therefore, the disaster relief payment was a "debt owing by such creditor to the Debtor that arose before the commencement of the case....," as required by Sec. 553. It matters not that the actual physical payment occurred post-Petition. *See Rochelle v. U.S.*, 521 F.2d 844 (5th Cir.1975); *Wilson v. IRS (In re Wilson)*, 29 B.R. 54 (Bankr.W.D.Ark.1982).

■ Further, the Court finds Debtor's assertions that the obligations of the parties were not "mutual" to be without merit. Both ASCS and CCC are under the auspices of The United States Department of Agriculture. ASCS merely acts on behalf of CCC since CCC has no employees and is, rather, a place to store commodities rather than an entity. The Court thus finds the mutuality requirement of Sec. 553 to be satisfied also.

■ Despite the applicability of Sec. 553 to the disaster relief payment, the Debtor argues that sanctions are appropriate under Sec. 362(h) since CCC, or ASCS, did not petition the Court for relief from the automatic stay before exercising its setoff rights. We disagree. The Debtor has not demonstrated how it has been injured by the actions of ASCS, injury being an element under Sec. 362(h). This being the case, the Court, in its discretion, declines to impose sanctions in connection with the setoff by ASCS of the disaster relief payment.

■ With regard to the balance of the advance deficiency payment, we think that ASCS is in clear violation of the automatic stay in its refusal to disburse the balance of the payment to the Debtor. By counsel's own admission, ASCS would not have turned these funds over to the Debtor absent the instant Motion being filed by the Debtor. In effect, ASCS has said to the Debtor, "If you want it, you have to come and get it." We think that this sort of action by a creditor is clearly prescribed by Sec. 362 and, further, we think it to be the sort of action requiring the imposition of sanctions under Sec. 362(h) as being willful. *See Cusanno v. Fidelity Bank, (In re Cusanno)*, 17 B.R. 879 (Bankr.E.D.Pa.1982), *affm'd.*, 29 B.R. 810 (E.D.Pa.1983); *Execu-*

*tive Associates, Inc., v. Southern Nat'l. Bank, (In re Executive Associates, Inc.),* 24 B.R. 171 (Bankr.S.D.Tex.1982).

At the hearing on this cause, counsel for ASCS made an oral motion that the Court make a determination whether the balance of the advance deficiency payment should be retained by the government. In support of its position, ASCS argues that Debtors have effected a conversion of their Chapter 11 case to a Chapter 12 and that since the Chapter 11 case was filed on June 8, 1984, the advance deficiency payment is a post-Petition obligation owed to the Debtor which is subject to setoff against the post-Petition obligations owed to CCC by the Debtor. ASCS argues that the filing of the Chapter 12 Petition while the Chapter 11 was pending was improper and that the result is that there is a jurisdictional defect in the current proceedings.

These issues have all been dealt with in a Memorandum Opinion dated February 26, 1987. Having been previously argued and decided, the issues are *res judicata* in the instant cause. The Chapter 12 case is properly before this Court, and the advance deficiency payment is an obligation accruing to this Chapter 12 estate post-Petition. That being the case, the obligations of the parties are not mutual, and the advance deficiency payment may not be setoff against the pre-Chapter 12 obligations owed by the Chapter 11 Debtor-in-Possession to CCC.

CCC, or ASCS, will be Ordered to, effective immediately, turn over the balance of the advance deficiency payment, a total of Nine Hundred Sixty-Six & 23/100 Dollars ($966.23), to the Debtor. In addition, ASCS will be assessed costs in the amount of One Hundred Eighty-Eight & 54/100 Dollars ($188.54) and attorney's fees in the amount of Two Thousand, Two Hundred Thirty-Two & 50/100 Dollars ($2,232.50), as set forth in the Affidavit of Douglas S. Roberts, Esq., counsel for Debtor, appended to the Trial Brief of Debtor in this cause.

An appropriate Order shall issue.