**In the Matter of Alan Richard HAZELTON, Debtor.**

**Bankruptcy No. 87–05459–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

April 11, 1988.

David R. Heyboer of Luce, Henderson, Bankson Heyboer & Lane, Port Huron, Mich., for debtor.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., for U.S. Attorney's Office.

Thomas J. Budzynski, Mt. Clemens, Mich., Trustee.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO LIFT AUTOMATIC STAY AND TO SETOFF

RAY REYNOLDS GRAVES, Bankruptcy Judge.

The United States, on behalf of the United States Department of Agriculture

("USDA"), brings this motion under 11 U.S.C. § 362(d) to lift the automatic stay set forth in § 362(a)(7). The United States asks this court to permit Farmers Home Administration ("FmHA"), an agency of USDA, to setoff, under 11 U.S.C. § 553, a $20,487.16 debt due and payable to Debtor in October 1987 by the Agricultural Stabilization and Conservation Service Commodity Credit Corporation ("ASCS–CCC") against the $1,147,958.84 pre-petition, undersecured debt that Debtor owes FmHA, a separate agency of USDA. The United States also seeks to perfect its security interest in Debtor's 1987 Ford truck. At a hearing on February 18, 1988, Debtor agreed to, and this court approved, recordation of the USDA's name on the truck title.

This court must decide whether the United States may, post-petition, setoff the obligation of the Commodity Credit Corporation against a pre-petition debt to the Farmers Home Administration, or whether the CCC's retention of a payment due post-petition violates the automatic stay provision of Title 11 and the payment should be made to the debtor in possession. After considering the motions, briefs and supporting documents submitted by the parties, the arguments of counsel, and Debtor's Confirmed Plan of Reorganization, the court denies the motion to permit Farmers Home Administration to setoff the debt Commodity Credit Corporation owes to Debtor against the amount Debtor owes to FmHA and finds that, as property of the chapter 12 estate, the $20,487.16 now held by the CCC is properly payable to the debtor in possession.

Debtor filed a chapter 12 petition on September 10, 1987. This court confirmed Debtor's Second Amended Plan of Reorganization in which the debtor committed to the plan all farm and non-farm income less business and living expenses for three years in an order effective December 14, 1987. (Docket # 34).

The facts relevant to the motion under consideration are not in dispute. Farmers Home Administration is an agency of the U.S. Department of Agriculture, established to administer certain assets under the jurisdiction of the Secretary of Agriculture and authorized to make and collect loans as necessary to carry out the purposes of Title 7. See 7 U.S.C. § 1981(a), (e). Debtor owes FmHA $1,147,958.84 in pre-petition obligations; while FmHA's claim is secured by Debtor's real estate and equipment, $834,958.84 of the total claim is unsecured.

The Commodity Credit Corporation is a wholly-owned corporation within the U.S. Department of Agriculture which Congress created to stabilize, support, and protect farm income. 15 U.S.C. § 714b. The corporation may borrow money, extend credit, and settle or adjust "any claim by or against the Corporation." 15 U.S.C. §§ 714b(i), (k), (*l*). The Secretary of Agriculture has established the Agricultural Stabilization and Conservation Service to act on behalf of CCC and to administer government farm programs through state and county committee offices. One program administered by ASCS is the Price Support and Production Adjustment Program in which Debtor participated during the 1986 crop year. See 7 C.F.R. § 713.108. The CCC owes Debtor a final corn deficiency payment, consisting of $10,018.50 in cash and $10,468.66 in commodities certificates, on the 1986 Price Support and Production Adjustment Programs ("1986 Contract"). (Docket # 25).

ASCS–CCC's obligation to Debtor results from Debtor's compliance with the terms and conditions of an April 1986 agreement he made with ASCS–CCC. The debtor had fulfilled his obligations to refrain from planting crops on designated acres and to maintain a ground cover on the same acres during the 1986 growing season by December 31, 1986. In return, Debtor received, during the 1986 growing season, feed grain advance payments as well as crop deficiency and diversion payments from the ASCS–CCC.

The USDA retained the $20,487.16 payment which became due and payable on October 1, 1987 and filed its Motion for Relief from the automatic stay on December 11, 1987. The USDA does not assert a

right to setoff the ASCS–CCC debt attributable to Debtor's 1987 Contract. No records indicate that FmHA has exercised any rights to setoff in past years.

The United States claims it has a right to setoff under section 553 of Title 11 which provides, in pertinent part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor against the debtor that arose before the commencement of the case ...

11 U.S.C. § 553(a).

 Section 553 is not an independent source of law that authorizes setoffs. Rather, it recognizes and preserves setoff rights that exist under non-bankruptcy law. *In re Haffner,* 12 B.R. 371, 373 (Bankr.M. D.Tenn.1981). Therefore, a creditor seeking to setoff a debt under Title 11 must establish a claim and a setoff right cognizable under state or federal law. Section 553 does not expand non-bankruptcy rights and clearly provides that the automatic stay provisions of section 362 limit post-petition setoff rights, requiring creditors to obtain court permission before taking any action against property of the estate. *In the Matter of Woloschak Farms,* 74 B.R. 261, 264 (Bankr.N.D.Ohio 1987); *United States v. Norton,* 717 F.2d 767, 773 (3rd Cir.1983).

The Farmers Home Administration can establish a non-bankruptcy right to setoff under regulations promulgated by the Secretary of Agriculture which permit the FmHA to ask the Commodity Credit Corporation for setoffs to recover a debt owed to FmHA. 7 C.F.R. § 13.1 et seq. The Administrator of ASCS or his designee must specifically authorize the setoff. § 13.4(f). The setoff right is limited, however, and may not be exercised "[w]here collection of a debt has been barred by a discharge in bankruptcy and the debtor has not expressed a desire to make payment." § 13.5(3). Thus, absent protection of the automatic stay that filing a bankruptcy petition triggers, the FmHA could setoff by

following the proper procedures under applicable federal regulations.

Debtor submits that FmHA is precluded from setting off by 7 C.F.R. § 1408.4(b)(3). This argument is without merit. The regulations provide that section 13 exclusively sets forth the conditions under which the Department of Agriculture or any agency of the USDA may seek setoffs of "amounts approved by Agricultural Stabilization and Conservation county committees for disbursement ..." 7 C.F.R. § 13.1; 7 C.F.R. § 1408.3.

In addition to establishing a setoff right cognizable under non-bankruptcy law, the United States must satisfy three elements required by section 553:

1. a debt owed by the creditor to the debtor which arose before commencement of the bankruptcy case;

2. a claim of the creditor against the debtor which also arose before commencement of the bankruptcy case; and

3. the debt and claim must be mutual obligations.

*Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Construction Corp.),* 23 B.R. 147, 151 (Bankr.M.D.Tenn. 1982). In the case at bar, the parties agree that Debtor's obligations to FmHA are prepetition debts. Thus, element number two is satisfied.

 Counsel for the debtor argues that the United States has failed to establish the remaining two elements. First, Debtor's counsel submits that Commodity Credit Corporation's obligation to Debtor arose post-petition because payment was not due until October 1, 1987. Debtor acknowledges, however, that everything necessary to complete the ASCS–CCC contract had been performed and that the amount of the debt was known before commencement of the chapter 12 case. A debt has been defined as "disputed if its existence is contested, unliquidated if its amount is contested, and unmatured if payment is not yet due." See A. Corbin, *Contracts* § 1314 (1962). When Debtor filed his chapter 12 petition on September 10, 1987, the CCC

debt was neither disputed nor unliquidated; rather it was "unmatured" by Corbin's definition and cognizable as a "claim" under the Bankruptcy Code. 11 U.S.C. § 541(a)(1); 11 U.S.C. § 1207(a)(1).

■ Unmatured debts are subject to post-petition setoffs under Michigan law. *J.L. Hudson Co. v. Thomas*, 6 F.Supp. 847, 858 (D.C.Mich.1934); *Thompson v. Union Trust Co.*, 130 Mich. 508, 518, 90 N.W. 294 (1902). In addition, bankruptcy courts recognize a creditor's right to setoff a debt which matures after the commencement of the case against a pre-petition indebtedness when non-bankruptcy law also permits the setoff. *Stair v. Hamilton Bank of Morristown (In re Morristown Lincoln–Mercury, Inc.)*, 42 B.R. 413, 418 (Bankr.E.D. Tenn.1984). Thus, element number one is satisfied.

■ Next, Debtor argues that the debt owed by the CCC and claim of the FmHA are not mutual obligations, in the case at bar, because Farmers Home Administration and Commodity Credit Corporation are separate and distinct entities and thus not the same creditor. In support of this argument, Debtor's counsel directs this court's attention to case authority which declines to allow the U.S. Small Business Association to setoff ASCS monies owed a debtor against a debt owed to the Small Business Association. *In re Rinehart*, 76 B.R. 746, 754 (Bankr.D.S.D.1987). The United States, however, can claim both a statutory right to setoff the CCC debt against the indebtedness to the FmHA, as stated by regulations, and a right of setoff "inherent in the United States Government" which exists independent of any statutory grant of authority to the executive branch. *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir.1986). This court recognizes the weight of the cited authority and rejects Debtor's argument.

■ In addition, Debtor denies that mutual obligations exist since the 1986 Contract was "executory" when the chapter 12 case commenced on September 10, 1987. Under section 365 of Title 11, a debtor in possession or trustee may assume or reject executory contracts. If the debt-

or in possession properly assumes an executory contract, any right to payment "arises" post-petition and is owed "to the debtor in possession *qua* trustee, and not the debtor. Consequently mutuality would not exist and setoff would be disallowed." *Walat Farms, Inc. v. United States of America (In re Walat Farms)*, 69 B.R. 529, 531 (Bankr.E.D.Mich.1987); *In re Braniff Airways, Inc.*, 42 B.R. 443, 449 (Bankr.N.D.Tex.1984).

Professor Countryman has defined executory contracts as,

> A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

V. Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn.L.Rev. 439, 460 (1973). The parties in the case at bar acknowledge that the only obligation required to complete the 1986 Contract when Debtor filed his chapter 12 petition was the ASCS–CCC's issuance of the final corn deficiency payment. According to Professor Countryman's definition, the 1986 Contract no longer was executory on September 11, 1987. Thus, this court finds that number three is satisfied.

Debtor's final argument is that he needs the $20,487.16 for the 1988 crop season and that his successful reorganization under chapter 12 may depend on it. Debtor also directs the court's attention to the fact that it was only after the commencement of the chapter 12 case that Farmers Home Administration began to exercise its setoff rights and that had the debtor filed his petition for bankruptcy relief one month later the FmHA would not be entitled to a setoff. (Debtor's Brief at pg. 5).

Counsel for the United States responds that "[d]ebtor has supplied no support for his ... irrelevant proposition" that the CCC money is necessary for the 1988 crop season. (United States' Reply to Debtor's Brief in Opposition to Right of Set-off at pg. 8). The United States also rejects "any claim of unfairness by this debtor ... when

debtor is wiping out over $800,000 in unsecured debt owed the United States through his plan!" Id. at pg. 8.

■ The right of a creditor to setoff is not absolute. The framers of Title 11 provided, in section 553(b), the standard by which a trustee or debtor in possession may recover certain *pre-petition* setoffs. Creditors, including the FmHA, who wish to make *post-petition* setoffs, however, must obtain court permission. Although the policy of the Code is to allow setoffs, a court may, after "due reflection" find that allowance of a certain setoff "would not be consistent with the provisions and purposes of the Bankruptcy Act [or Code] as a whole." *Bohack Corp. v. Borden, Inc. (In the Matter of Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir.1979). For example, a setoff could deprive the reorganizing debtor of liquid assets at a time when they are most needed, in essence, precluding him from continuing to function, pay creditors, and carry on his business. *Susquehanna Chemical Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787 (3rd Cir.1949). As the *Susquehanna* court said, "The purpose of reorganization is to save a sick business, not to bury it and divide up its belongings." Id. at 787.

Furthermore, the Sixth Circuit recently reaffirmed that "[t]he application of [post-petition] setoff ... is permissive and lies within the equitable discretion of the trial court." *Duvoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987). In *Duvoisin*, the bankruptcy court declined to allow a setoff where it perceived the "purpose" of the creditor's loan during the ninety days before the debtor's filing was to obtain a setoff right and thus improve his position among other creditors. On appeal, both the district court and the Sixth Circuit affirmed the bankruptcy court's exercise of discretion in denying the setoff.

■ Similarly, this court declines to allow Farmers Home Administration's request to exercise a post-petition setoff. This court can infer that FmHA decided to setoff the CCC debt because of Debtor's decision to invoke the protection of the

Bankruptcy Code. The United States acknowledges that during the year prior to bankruptcy "[d]ebtor ha[d] received substantial payments consisting of feed grain advances, crop deficiency and diversion payments. He ha[d] also received disaster grant payments due to flood damage." See Brief in Support of United States' Motion for Relief at pp. 2–3. There is no evidence that FmHA had received or even requested that the ASCS–CCC setoff any of these payments under the applicable regulations. In addition, Debtor participated in the Price Support Program during the 1987 crop year without having the FmHA exercise any setoff rights. Finally, counsel for the United States offers no evidence to rebut Debtor's assertion that he needs the money owed by ASCS–CCC for the 1988 crop season.

The Supreme Court has recognized, in the context of railroad reorganizations, that debtors in reorganization cases must collect amounts owed to keep "cash inflow sufficient for operating purposes" if they are "to put back into operation" going concerns. *Baker v. Gold Seal Liquors*, 417 U.S. 467, 470–71, 94 S.Ct. 2504, 2506–07, 41 L.Ed.2d 243 (1974). Such is also the case with chapter 12 debtors who depend on funds earned by participating in the Price Support and Production Adjustment Programs. There is little reason for Congress to authorize and for farmers to participate in the programs administered and financed by ASCS–CCC if the FmHA can setoff payments which a debtor-farmer needs to operate during the first post-petition crop season. It is because allowing the setoff is inconsistent with the purposes of chapter 12 and the rehabilitation of American farmers that this court denies the petition to setoff the ASCS–CCC debt which matured after the commencement of the chapter 12 bankruptcy case against Debtor's pre-petition indebtedness to FmHA.

Generally, courts treat any action taken in violation of the automatic stay as *"void ab initio* ... as though it were never commenced." *B–U Acquisition Group, Inc. v. Utica Mutual Ins. Co. (In the Matter of Baldwin–United Corp.)*, 52 B.R. 541, 548

(Bankr.S.D.Ohio 1985). Occasionally, courts may annul, retroactively, the automatic stay, validate a post-petition setoff action, and permit it to stand. *In re Clark,* 79 B.R. 723, 726 (Bankr.S.D.Ohio 1987). In the case at bar, however, the court holds that actions taken by FmHA requesting that ASCS–CCC setoff the amount due on the 1986 Contract in October 1987 are *void ab initio* and that the ASCS–CCC debt which matured in October 1987 is due and payable to the debtor in possession.

■ Creditors who do not turn over property of the estate to the Debtor risk having the court impose sanctions under section 362(h) which allows an injured individual to recover actual damages including costs, attorneys' fees, and punitive damages when appropriate. *Ketelsen v. United States of America (In re Ketelsen),* 78 B.R. 573, 575 (Bankr.D.S.D.1987); *In re Rinehart* 76 B.R. 746, 756 (Bankr.D.S.D. 1987); *In re Woloschak Farms,* 74 B.R. 261, 264–65 (Bankr.N.D.Ohio 1987). However, when the debtor can be made whole by "return of the monies and the award of attorneys' fees and costs," an award of punitive damages generally is not justified. *Carlsen v. Internal Revenue Service* (In re Carlsen, Jr.), 63 B.R. 706, 711 (Bankr.C.D.Cal.1986).

In the case at bar, no request for punitive damages is before the court. Rather, the Debtor has asked that the court deny the motion to lift the stay and award costs and attorneys' fees incurred in objecting to the United States' motion.

IT IS, THEREFORE, ORDERED that the USDA pay Debtor's reasonable attorney's fees and costs to be determined at a hearing. Furthermore, the USDA is ordered to turn over the final payment on the 1986 contract within five days from the entry of this order.

IT IS SO ORDERED.