In re Daniel C. LUND and Candace R. Lund, Debtors.

Bankruptcy No. 90–05312.

United States Bankruptcy Court, D. North Dakota.

Dec. 3, 1990.

Jay D. Carlson, Fargo, N.D., for debtors.

Vicki Aldridge, Fargo, N.D., Asst. U.S. Atty.

Wayne Drewes, Fargo, N.D., Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is the confirmation of the Debtors, Daniel C. and Candace R. Lund's, Amended Chapter 12 Plan of Reorganization with Addendum. The United States of America through the Commodity Credit Corporation objects to the plan of reorganization, asserting that the plan impairs the Agricultural Stabilization and Conservation Service's right of administrative setoff and therefore, the plan fails to meet the requirements of section 1225(a)(5)(B)(ii) of the Bankruptcy Code.

### 1.

The Debtors, Daniel and Candace Lund, have a farming operation near Alice, North Dakota. The Debtors maintain two farms, one in Cass County and one in Barnes County. In conjunction with the farming operation, and prior to filing, the Lunds entered into certain government farm programs. As a result of one of these 1988 farm programs, the Lunds are indebted to the Commodity Credit Corporation (CCC) for a deficiency overpayment of approximately $20,000.00. The parties concede

that the Lunds' $20,000.00 indebtedness to the CCC is a pre-petition claim. In addition to the 1988 farm program, the Debtors enrolled in a government program entitled 1990 Price Support And Product Adjustment Program or "Zero–92" on February 2, 1990. It is the program payments potentially due under the Zero–92 program which are the subject of this present dispute. Under the Zero–92 program the farmer/producer agrees to limit the acreage of specific crops and implement approved conservation uses in exchange for certain price support deficiency payments. The Lunds received an advance payment of $2,500.00 under the Zero–92 program prior to their filing bankruptcy. The Debtors filed for relief under Chapter 12 of the Bankruptcy Code on April 18, 1990. Subsequent to the filing, the Debtors complied with the acreage reduction, weed control and other obligations as called for in the contract.

### 2.

The CCC objects to the Debtors' plan of reorganization contending that the plan impairs their legal right to seek setoff under section 553 of the Bankruptcy Code. The plan provides for the following treatment of CCC's claim:

> The claim of the United States of America for 1988 deficiency payments is an obligation in the sum of $20,000.00 and shall be paid as an unsecured obligation of the debtor's estate in the sum of $17,000.00 prorate with all other unsecured claims against the debtor's estate. The sum of $3,000.00 shall be paid in three (3) equal installments of $1,144.79, with interest to accrue at the rate of nine percent (9%) per annum commencing on December 15, 1990, with subsequent payments due on the 15th day of December in 1991, and 1992. The Commodity Credit Corporation must move for relief from stay prior to exercising any rights to setoff after confirmation of the debtor's plan. Upon confirmation of this plan, the Commodity Credit Corporation acknowledges that it has no right to set off any of the 1988 deficiency payment in the sum of $17,000.00 against any pre-

petition obligation owed to the debtor by the CCC.

The Debtors contend that CCC has no right of setoff because the obligations owed to the Debtors by CCC, under the Zero–92 program, are post-petition obligations of CCC and therefore, such payments lack the requisite mutuality pursuant to section 553. See 11 U.S.C. § 553. Therefore, the issue in the present case is whether the remaining payments owed to the Debtor under the Zero–92 program are pre-petition, thereby allowing CCC to exercise its right of setoff against the pre-petition $20,000.00 overpayment claim owed by the Debtors to CCC.

### 3.

A creditor's right of setoff in bankruptcy is explicitly set forth in section 553(a) which provides in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

11 U.S.C. § 553(a).

Section 553 contemplates a setoff of a debt owed by a creditor against a claim of that creditor. In re Whitman, 38 B.R. 395 (Bankr.D.N.D.1984); 11 U.S.C. § 553. Both the debt and the claim must have arisen prior to bankruptcy filing and they must be mutual obligations. Id. at 397; see also In re Axvig, 68 B.R. 910 (Bankr. D.N.D.1987) citing McDaniel National Bank v. Bridwell, 74 F.2d 331, 332 (8th Cir.1934); 11 U.S.C. § 553. Mutuality of debt, although not defined by the Bankruptcy Code, has been defined by bankruptcy courts as requiring something to be owed by both sides. In re Axvig, 68 B.R. 910, 918 (Bankr.D.N.D.1987) citing In re V.N. DePrizio Construction Co., 52 B.R. 283, 287 (Bankr.N.D.Ill.1985); In re Morristown Lincoln–Mercury, Inc., 42 B.R. 413, 415 (Bankr.E.D.Tenn.1984). The basic test of mutuality of obligation is something

owed by both sides in the same rights and capacity. The debt need not be the same character and, in fact, the Code itself contemplates debts arising from different transactions. *In re Whitman*, 38 B.R. 395, 397 (Bankr.D.N.D.1984). A creditor's "right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed the debt is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated." *In re Whitman*, 38 B.R. 395, 397 (Bankr.D.N.D.1984) citing *In re Isis Foods, Inc.*, 24 B.R. 75 (Bankr.W.D.Mo.1982); *see also In re Matthieson*, 63 B.R. 56, 59 (D.Minn.1986). Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed. *In re Matthieson*, 63 B.R. 56, 59 (D.Minn.1986) citing *Michigan Consolidated Gas Co. v. Fred Sanders Co.*, 33 B.R. 310, 312 (Bankr.E.D.Mich.1983).

4.

█ In support of their position, the Debtors urge this court to adopt the minority position followed in *In re Walat Farms*, 69 B.R. 529 (Bankr.E.D.Mich.1987) and *In re Hazelton*, 85 B.R. 400 (Bankr.E.D.Mich. 1988) (denying setoff based upon public policy). In *Walat Farms*, the debtor filed for relief under Chapter 11. The Commodity Credit Corporation sought to offset an obligation owed to the debtor from a 1985 price support and production adjustment program executed pre-petition. The program required the debtor to refrain from planting crops and to maintain ground cover on its farmland in return the CCC would pay the debtor a deficiency payment based on a statutory formula. *Id.* at 529. The

*Walat Farms* court stated that the farm program was an executory contract which must be assumed by the debtor-in-possession. If assumed, the court reasoned, any right to deficiency payment would only arise post-petition and be owed to the debtor-in-possession as trustee and not the debtor. The *Walat Farms* court concluded that the debtor-in-possession and the debtor are different entities and therefore, the requisite mutuality would not exist and setoff would be disallowed. *Id.* at 531. Citing *In re Braniff Airways, Inc.*, 42 B.R. 443, 449 (Bankr.N.D.Tex.1984) citing *In re Hill*, 19 B.R. 375, 380 (Bankr.N.D.Tex. 1982).[1]

The CCC urges the court to adopt the majority reasoning as stated in *In re Matthieson*, 63 B.R. 56 (D.Minn.1986), which explicitly rejected the holding of *In re Hill, supra.*[2] *In re Matthieson* has been the leading case in this area.

*In re Matthieson* concerned six consolidated Chapter 7 cases. *In re Matthieson*, 63 B.R. at 58. In each case the bankruptcy court had granted relief from stay in order for the ASCS to setoff farm program payments due the debtor against pre-petition indebtedness owed to the ASCS. *Id.* Prior to filing bankruptcy the debtors/farmers entered into farm programs which required the producers to refrain from planting crops on a portion of their farmland and to implement certain soil conservation practices. *Id.* In return, ASCS agreed to make deficiency payments to the producers. *Id.* The amount of payment would be computed at the end of the farm year and could amount to zero. *Id.* As in the present case, each farmer had entered into the farm program prior to filing bankruptcy. *Id.* The court in *Matthieson* explicitly re-

---

1. The case of *In re Hill*, 19 B.R. 375 (Bankr. N.D.Tex.1982) was impliedly overruled by *In re Buske*, 75 B.R. 213 (Bankr.N.D.Tex.1987). This implied overruling was recognized by *In re Lundell Farms*, 86 B.R. 582 (Bankr.W.D.Wisc.1988) and *In re Evatt*, 112 B.R. 405 (Bankr.W.D.Okla. 1989).

2. The reasoning of *In re Matthieson* has been adopted by most of the courts that have considered this issue. *See In re Parish*, 75 B.R. 14 (Bankr.N.D.Tex.1987); *In re Lundell Farms*, 86 B.R. 582 (Bankr.W.D.Wisc.1988) (setoff permit-

ted in Chapter 11 case when deficiency payment amount already ascertained); *In re Ratliff*, 79 B.R. 930 (Bankr.D.Colo.1987) (Conservation Reserve Program payments may be setoff against indebtedness to Farmers Home Administration); *In re Buske*, 75 B.R. 213 (Bankr.N.D.Tex.1987); *In re Pinkert*, 75 B.R. 218 (Bankr.N.D.Tex.1987); *In re Woloschak Farms*, 74 B.R. 261 (Bankr. N.D.Ohio 1987); *In re Brooks Farms*, 70 B.R. 368 (Bankr.E.D.Wisc.1987). *See* Collier's *Farm Bankruptcy Guide* ¶ 2.12[1].

jected the reasoning of *In re Hill*, 19 B.R. 375 (Bankr.N.D.Tex.1982), the case in which *Walat Farms* reasoning is based. *Id.* at 59. The *Matthieson* court reasoned that a "creditor's right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed [the debt] is absolutely owing but not presently due, or where a definite liability has occurred but is yet unliquidated". *Id.* at 59, citing *In re Isis Foods, Inc.*, 24 B.R. 75, 76 (Bankr. W.D.Mo.1982); *In re Whitman*, 38 B.R. 395, 397 (Bankr.D.N.D.1984). The trustee, in *Matthieson*, objected to the setoff on the grounds that the deficiency payment was a post-petition obligation that could not be setoff against pre-petition indebtedness owed to the government. *Id.* The farmer's right to receive a deficiency payment, the trustee urged, was subject to various conditions precedent. *Id.* The trustee asserted that if the farmer failed to meet these condition precedents the government would not owe any payment to the farmer under the contract. *Id.* The *Matthieson* court rejected the trustee's contention that the condition precedents *i.e.*, set aside requirements, soil conservation requirements, filing requirements, and final determination that a deficiency exists, were in fact condition precedents. *Id.* To the contrary, the *Matthieson* court reasoned that the obligations under the farm program contracts were in the nature of mutual obligations set at the time of the signing of the contracts and not conditions precedent. *Id.* at 60. The court reasoned that condition precedents call for the performance of some act or the happening of some event after the contract was entered into, and upon the performance or happening of which its obligation is made to depend. *Id.* at 59. The court further reasoned that a condition precedent is to be distinguished

from a promise in that it creates no rights or duties in and of itself but is merely a limiting or modifying factor. *Id.; In re Lee*, 35 B.R. 663, 665 (Bankr.N.D.Ohio 1983). The *Matthieson* court in adopting the reasoning of *In re Lee*, 35 B.R. 663 (Bankr.N.D.Ohio 1983), noted that the farm program contracts provide for liquidated damages for the failure to meet contract requirements and that the debtor received an advance deficiency payment under the program.[3] This, the court reasoned, infers that the obligations under the contract were in the nature of contractual duties rather than condition precedents. *Id.* at 60. Therefore, the *Matthieson* court concluded that provisions such as liquidated damages and advance payments indicate an intent of the parties to create mutual obligations under the contract and not conditions precedent to performance, and therefore, the deficiency program contract obligations arose at the time the contract was created and were thus pre-petition obligations subject to setoff pursuant to 11 U.S.C. § 553. *Id.* at 60.[4]

In a similar case, the Minnesota District Court refused to follow *In re Walat Farms, supra. See In re Greseth*, 78 B.R. 936, 942 (D.Minn.1987). The *Greseth* court rejected the debtors' contention that *Matthieson* is inapplicable in reorganization proceedings. *Greseth*, 78 B.R. at 942. The *Greseth* court followed the reasoning of *Matthieson* in concluding that the debtors assumed mutually enforceable obligations pre-petition at the time the farm program contract was formed. *Id.* Regardless of the anti-erosion procedures required of the farm contracts and performed post-petition, the duties and obligations of the party were determined pre-petition at the time the parties formed the contract. *Id.* Therefore, the *Greseth* court concluded

---

**3.** The case of *In re Lee*, 35 B.R. 663 (Bankr. N.D.Ohio 1983), concerned Payment In Kind (PIK) program with requirements under the contract identical to that of *Matthieson.*

**4.** The *Matthieson* court further noted that even if the requirements under the contract were condition precedents, the obligations of ASCS were binding from the inception of the contracts. A condition precedent is a condition precedent to performance under the contract,

not formation of the contract. When a condition precedent remains unsatisfied it relieves a party to the contract of the obligation to perform. It does not negate the existence of the contract or the binding contractual relationship of the parties. The contract remains in existence but due to the failure to satisfy a condition precedent, performance cannot be compelled under the contract. *Id.*

that the payments owing to the debtor from the CRP contract are pre-petition obligations of CCC and subject to offset pursuant to 11 U.S.C. § 553. *Id.*

The cases of *Matthieson* and *Greseth* are directly on point with the instant proceeding. In the present case the Lunds entered into the farm program contract pre-petition. The Debtors testified that the contract requires soil conservation and acreage reduction requirements which will necessarily be performed post-petition. The subject contracts contain a provision for liquidated damages if the producer fails to carry out the terms specified in the contract. *See* Exhibit 6 ¶ 13 "Liquidated Damages". In addition, as in *Matthieson*, the Lunds received a payment in advance of complying with the terms of the program. Moreover, the Zero–92 program provides that:

> The contract is effective when signed by the operator and each of the producers on the farm, and an authorized representative of CCC.

*See* Exhibit 6 ¶ 17(a).

The court believes this is further evidence of the parties' intent to create mutual obligations enforceable at the time the contract was entered into. *See In re Parrish*, 75 B.R. 14, 16 (N.D.Tex.1987). Therefore, as reasoned in *Matthieson* and *Parrish* the provisions indicate an intent of the Lunds and CCC to create mutual obligations under the Zero–92 program. Therefore, the obligations of CCC under the "Zero–92" program arose at the time the contract was created and thus, are pre-petition obligations subject to offset pursuant to section 553 of the Bankruptcy Code.

Accordingly, because the Debtors' plan fails to preserve ASCS/CCC's contractual right of setoff, the plan violates § 1225(a)(5)(B)(ii) and cannot be confirmed as presently constituted. Confirmation is DENIED.

IT IS SO ORDERED.