**In re J.W. GORE and Judy Gore, Debtors.**

**UNITED STATES of America, SMALL BUSINESS ADMINISTRATION, Plaintiff,**

v.

**J.W. GORE and Judy Gore a/k/a J.W. Gore Farms, Debtors; and A.L. Tenney, Trustee, Defendants.**

**Bankruptcy Nos. 88–04–2284M, 89–570M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Oct. 1, 1990.

A.L. Tenney, N. Little Rock, Ark., trustee.

Lance Hanshaw, Cabot, Ark., for debtors.

William Adair, Little Rock, Ark., for Small Business Admin.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On November 14, 1988, J.W. Gore and Judy Gore filed a voluntary petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. Confirmation of the debtors' first proposed plan of reorganization was denied on December 21, 1989, 113 B.R. 504. The Gores filed a second amended plan on February 21, 1990. A confirmation hearing was held on March 26, 1990, and the United States (the Government), on behalf of the Small Business Administration (SBA), was the only objecting creditor.[1] The Government's objection asserted that the proposed plan should treat SBA's claim as secured, pursuant to 11 U.S.C. §§ 506(a) and 553, by virtue of payments potentially due to the Gores under the Agricultural Stabilization and Conservation Service's (ASCS) Conservation Reserve Program (CRP), a government set-aside project to conserve and improve farmland. The Government also filed a motion requesting relief from the automatic stay to apply for an offset of the CRP payments against SBA's debt.[2]

The matters before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L) and (G), and the Court has jurisdiction to enter a final judgment. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

The parties stipulated that the Government, through the SBA, holds a prepetition claim against the Gores in the amount of $107,798.00. The proposed plan provides that, "SBA shall be paid nothing in regards to its Class 6 claim because the value of collateral securing its claim does not exceed the first mortgage on same. SBA's entire claim will be dealt with as an unsecured claim in Class 7."

Mr. Gore testified that, in 1988, before filing his chapter 12 petition, he signed a ten-year contract with the Government under the CRP program. Under the program, the Gores agreed to set aside 105 acres in exchange for payments of approximately $5,250.00 per year. Mr. Gore testified that he was required to make reports to the Government each year regarding the set-aside acreage, to maintain the acreage, and to pay taxes on the acreage. The Gores have received CRP payments for the crop years 1988 and 1989. Mr. Gore testified that the annual CRP payment was included in the cash flow analysis for his chapter 12 plan and that the Gores intended to use the payments to operate their farm and pay their bills.

## DISCUSSION

The Government asserts that, under 11 U.S.C. § 553, it is entitled to offset against the Gores' debt any future CRP payments received by the Gores. Section 553(a) provides, in part, as follows:

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

A claim subject to offset under section 553 is treated as a secured claim under 11 U.S.C. § 506(a) to the extent of the offset. Section 553 does not create an independent right of offset, but recognizes offset rights

---

1. Kansas City Life Insurance Company and Travelers Insurance Company also filed objections to the second amended plan; however, the objections were withdrawn prior to the confirmation hearing.

2. The Government also filed a motion to supplement the record following the confirmation hearing. This motion is denied, and the Court has based its decision only on the evidence presented at the confirmation hearing on March 26, 1990, as well as applicable law.

arising under other federal or state law. 4 *Collier on Bankruptcy* ¶ 553.02 (15th ed. 1990). Regulations promulgated by the Secretary of Agriculture grant offset rights to the SBA. 7 C.F.R. §§ 13.1, 13.7 (1990); 31 U.S.C. § 3716 (1988). *See In re Cloverleaf Farmer's Coop.*, 114 B.R. 1010, 1016 (Bankr.D.S.D.1990).

The three requirements for an offset under section 553 are: (1) the creditor owes a debt to the debtor which arose prior to the commencement of a bankruptcy case; (2) the creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and claim are mutual obligations. *Cloverleaf Farmer's Coop*, 114 B.R. at 1016; *In re Evatt*, 112 B.R. 405, 410–14 (Bankr.W.D. Okla.1989), *aff'd*, 112 B.R. 417 (W.D.Okla. 1990).

In this case, the requirement of a prepetition claim of the creditor against the debtors is satisfied. It is undisputed that the Gores owed the Government, through the SBA, a sum certain before the bankruptcy petition was filed. However, the other two requirements for a section 553 offset are not met.

To effectuate a section 553 offset against the Gores' prepetition debt to the Government, the Government's obligation to make CRP payments to the Gores must have also arisen prepetition. The Government argues that the Gores' prepetition contract with the Government amounted to a single obligation payable in ten annual installments. The Gores argue that obligations under the contract arose year to year. Neither party introduced the contract into evidence.

Upon filing their chapter 12 petition, the Gores were entitled to assume or reject existing executory contracts prior to confirmation. 11 U.S.C. §§ 365, 1203, 1222(b)(6). The Gores' chapter 12 plan provides that all "pre-petition executory contracts and unexpired leases are hereby assumed."

For a contract to be executory, material performance must remain due on both sides, and the contract is no longer executory if performance on one side is completed. *See 2 Collier on Bankruptcy* ¶ 365.02 (15th ed. 1990). If a contract is executory, the failure of either party to complete its performance would constitute a material breach excusing the performance of the other. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973) (definition adopted by the Eighth Circuit Court of Appeals in *Northwest Airlines, Inc. v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977)).

The obligations of the parties to a CRP contract are set forth by federal regulation. 7 C.F.R. pts. 704, 718 (1990). Under 7 C.F.R. § 704.12(a)(1), all CRP participants are obligated to "[c]arry out the terms and conditions of the CRP Contract for a period of 10 crop years from the date the CRP Contract is entered into by the participant and [the Government]." Mr. Gore testified that he had obligated himself to participate in the CRP program for ten years, but that he had to "sign up" or "report" every year and "maintain" the acreage. To determine continued eligibility for the program, the CRP participant is required to annually furnish a report of "acreage, land use, production and other program requirements." 7 C.F.R. § 718.6(a). The federal regulations also require the participant to "implement a conservation plan" by, among other things, withholding the set-aside acreage from production and providing a vegetative cover to control soil erosion. 7 C.F.R. § 704.12(a)(2)–(8). The regulations provide that, if a CRP participant fails to carry out the conditions of the CRP contract, the Government may terminate the contract, and the participant "shall forfeit all rights to further payments under the CRP Contract, refund all payments received together with interest thereon ... and pay liquidated damages to [the Government] in such amount and under such conditions as are specified in the CRP Contract." 7 C.F.R. § 704.22(a)(1)–(2). At the time the chapter 12 petition was filed in this case, performance was due from both parties. The Gores had participated in the program only two years, and the Government had made only two payments to the Gores. The Gores' right to receive future payments

under the ten-year contract was contingent on their continued performance under the contract.

Since material performance is due from both parties, the contract between the Government and the Gores is executory and the Gores, as debtors-in-possession, are entitled to assume the contract through their chapter 12 plan. *Evatt,* 112 B.R. at 411; *Walat Farms, Inc. v. United States (In re Walat Farms, Inc.),* 69 B.R. 529, 531 (Bankr.E.D.Mich.1987). The assumed CRP contract then becomes a postpetition contract under which the debtors-in-possession are obligated to perform. The Government's obligation to make the annual postpetition payments under the assumed contract will accrue only as the obligations of the debtors-in-possession are performed postpetition. If the debtors-in-possession fail to perform, the Government can terminate the contract. Therefore, the Government's debt to the Gores was not absolutely owed prepetition and the postpetition CRP payments cannot be offset against the Gores' prepetition debt to the SBA. *See Evatt,* 112 B.R. at 411–12; *Walat Farms,* 69 B.R. at 531.

 Furthermore, the third requirement of mutuality is not met in this case. Mutuality requires that the "debts must be in the same right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy ¶ 553.04[2] (15th ed. 1990). Case law is clear that SBA and ASCS, which administers the CRP program, stand in the same capacity as federal agencies for purposes of a section 553 offset. *Cloverleaf Farmers Coop.,* 114 B.R. at 1016; *United States v. Rinehart,* 88 B.R. 1014, 1016–18 (D.S.D.1988), *modified,* 887 F.2d 165 (8th Cir.1989). However, a distinction must be made between a prepetition debtor and a debtor-in-possession, the separate entity that is created after the filing of a chapter 12 petition. Where a debtor-in-possession assumes an executory contract, the debtor-in-possession, rather than the prepetition debtor, becomes obligated to perform under the contract and any postpetition right to benefits under the contract accrues to the debtor-in-possession

rather than to the prepetition debtor. *Evatt,* 112 B.R. at 413–14; *In re Fryar,* 93 B.R. 101, 104 (Bankr.W.D.Tex.1988); *Walat Farms,* 69 B.R. at 531. A postpetition debtor-in-possession does not stand in the same shoes as a prepetition debtor for offset purposes. *Evatt,* 112 B.R. at 414. The change in capacity upon the filing of the chapter 12 petition destroys the mutuality of the obligations. *Fryar,* 93 B.R. at 104.

## CONCLUSION

For the reasons stated, the Government cannot offset postpetition payments under the debtors' CRP contract against the debtors' prepetition debt to the SBA. Therefore, the Government's motion for relief from stay to pursue an offset is denied. The Government's objection to confirmation is also overruled, and the debtors' chapter 12 plan is confirmed.

IT IS SO ORDERED.