**UNITED STATES of America, acting Through the AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE, Appellant,**

v.

**Willis R. GERTH, Appellee.**

**No. 92–1799.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1992.

Decided April 29, 1993.

*United States v. Ray,* 768 F.2d 991, 995 (8th Cir.1985).

Samuel R. Maizel, argued, Washington, DC, for appellant.

Harry E. Engberg, argued, Sioux Falls, SD, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

MAGILL, Circuit Judge.

The Department of Agriculture's Agricultural Stabilization and Conservation Service (ASCS) appeals from denial of a motion for modification of automatic stay and for setoff in a Chapter 12 reorganization proceeding. 136 B.R. 241. ASCS claims it has a right under 11 U.S.C. § 553 to set off a debtor's Conservation Reserve Program (CRP) payments against a debt which the debtor owes the government. This case addresses two issues of first impression: (1) whether assumption of executory CRP contracts by a debtor-in-possession under 11 U.S.C. § 365 transforms ASCS's obli-

gation to pay into postpetition obligations; and (2) whether the debtor and the debtor-in-possession are the same entity for purposes of determining mutuality. We reverse in part, holding that assumption of the CRP contracts did not transform ASCS's obligation to pay into postpetition obligations. We affirm in part, holding that the debtor and the debtor-in-possession are the same entity. We vacate the bankruptcy court's order to deny ASCS's motion for modification of automatic stay and for setoff, and remand for further proceedings.

## I. BACKGROUND

Willis Gerth, a farmer, and ASCS entered into two CRP contracts on August 27, 1987, and July 7, 1989.[1] In exchange for rental payments from ASCS, Gerth is required to withhold certain land from production, establish a vegetative cover to prevent erosion, maintain the cover, and file certain forms each year. Appendices to the contracts incorporate as contract terms several regulations. One of the incorporated regulations allows ASCS to set off debts to the government against CRP payments. Gerth will receive payments from these contracts through 1999. The total amount yet to be received is approximately $17,310.

On January 1, 1991, Gerth commenced the present bankruptcy proceeding under Chapter 12. ASCS filed a proof of claim regarding a debt which Gerth owed the government.[2] This proof of claim noted that ASCS's claims were subject to setoff. Gerth, as debtor-in-possession, moved to assume the CRP contracts as executory contracts under 11 U.S.C. § 365. The bankruptcy court entered an order "that the debtor shall accept and assume the responsibilities contracted for under his contract for the Conservation Reserve Program."

Gerth then filed a plan of reorganization which treated ASCS's claim as unsecured. ASCS opposed the plan and moved for relief from the automatic stay to allow ASCS to set off Gerth's CRP payments against his debt to the government. Gerth objected to the setoff.

The bankruptcy court denied ASCS's motion. It reasoned that because Gerth, as the debtor-in-possession, may accept or reject an executory contract under 11 U.S.C. §§ 365 and 1222(b)(6), the payments to which the debtor becomes entitled are postpetition payments. A prepetition debt cannot set off a postpetition claim; therefore, the court found ASCS had no right of setoff. The court also held that the debtor and the debtor-in-possession are the same entity for determining whether the debt and the claim are mutual obligations. Because the court found no right of setoff, it did not reach the issue of whether ASCS was entitled to relief from the automatic stay under 11 U.S.C. § 362. The district court affirmed.

## II. DISCUSSION

■ Whether ASCS has a right of setoff is a matter of law, which we review de novo. *See Mickelson v. Leser (In re Leser)*, 939 F.2d 669, 671 (8th Cir.1991). 11 U.S.C. § 553 preserves a creditor's right to set off mutual obligations between it and a debtor. This section states, in relevant part:

Except as otherwise provided in this section and in [§ ] 362 ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against

---

1. The contract provisions refer to the Commodity Credit Corporation (CCC) as the party with which Gerth contracted. CCC is a wholly-owned government corporation within the United States Department of Agriculture. Because CCC has no employees, the Secretary of Agriculture established ASCS to act on behalf of CCC and to administer government farm programs. *In re Woloschak Farms*, 74 B.R. 261, 262 (Bankr. N.D.Ohio 1987), *vacated on other grounds*, 109 B.R. 736 (N.D.Ohio 1989).

2. The main portion of this debt arose during a former Chapter 11 bankruptcy proceeding in which ASCS allowed Gerth to sell some grain which was collateral for an earlier loan. Gerth used this cash for operating expenses. This Chapter 11 proceeding was dismissed at Gerth's request in 1990. The balance of Gerth's debt to the government is from agricultural price support overpayments in 1988 and 1989.

the debtor that arose before the commencement of the case....

11 U.S.C. § 553.

■ In order for ASCS to establish its right of setoff, it must demonstrate:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

*Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1035 (5th Cir.1987) (quoting *In re Nickerson & Nickerson, Inc.,* 62 B.R. 83, 85 (Bankr.D.Neb.1986)). In other words, it is necessary only that the debt and the claim both arose prepetition and are mutual. *Id.* Gerth concedes ASCS has a claim against Gerth that arose prepetition, which satisfies the second requirement above.

Gerth contends that the first and third requirements—that the debt from ASCS to him under the CRP contracts arise prepetition and that the debt and claim be mutual obligations—are not satisfied. Gerth urges us to adopt the reasoning in a line of bankruptcy court decisions beginning with *Walat Farms, Inc. v. United States of America (In re Walat Farms),* 69 B.R. 529 (Bankr.E.D.Mich.1987). ASCS, however, urges us to adopt the reasoning of a contrary line of decisions which has rejected *Walat Farms* and its progeny. The seminal opinion in this line is *Moratzka v. United States of America; Agricultural Stabilization and Conservation Serv. (In re Matthieson),* 63 B.R. 56 (D.Minn.1986).

We disagree with the reasoning in *Walat Farms* and the cases following it, and reject that rationale. We find *Matthieson* and the cases following it persuasive, and adopt that reasoning.

## A. Effect of Assuming an Executory Contract

Gerth argues that when he assumed the executory CRP contracts, ASCS's obligation to pay was transformed into a postpetition obligation. Whether mere assumption of an executory contract by the debtor-in-possession will change unperformed obligations into postpetition obligations is an issue of first impression by this circuit. Both parties agree that the CRP contracts at issue are executory.

Gerth cites to *Walat Farms,* which states that when an executory contract is assumed postpetition, the right to payment arises postpetition, and is owed to the debtor-in-possession, not the debtor. *Walat Farms,* 69 B.R. at 531. The *Walat Farms* court's decision was based on the lack of mutuality, but the court also indicates that assumption of the contract makes the obligations under the contract arise postpetition. *See id.*

Several courts have followed *Walat Farms.* *See, e.g., Small Business Admin. v. Gore (In re Gore),* 124 B.R. 75, 77–78 (Bankr.E.D.Ark.1990); *In re Evatt,* 112 B.R. 405, 411–14 (Bankr.W.D.Okla.1989), *aff'd,* 112 B.R. 417 (W.D.Okla.1990).[3] These courts have found that when a debtor-in-possession assumes an executory contract, it becomes a postpetition contract, the obligations under the contract arise postpetition, and payments are made to the debtor-in-possession. *Gore,* 124 B.R. at 78; *Evatt,* 112 B.R. at 416, 419–20. These courts conclude that the debt is not absolutely owed prepetition and setoff is not permitted.

*Matthieson,* which involved a Chapter 7 case, reached a different conclusion when it addressed the same issue of whether payments which ASCS owed the debtor were prepetition obligations and subject to offset against a prepetition claim. The *Matthieson* court did not conclude that assumption by a debtor-in-possession transforms obligations into postpetition obligations. Instead, it examined the contract itself, and

---

**3.** The *Evatt* court stated that *In re Fryar,* 93 B.R. 101 (Bankr.W.D.Tex.1988), also followed *Walat Farms.* We note *Fryar* has since been vacated.

*See In re Fryar,* 113 B.R. 317, 318 (W.D.Tex. 1989).

stated that the contract requirements were "in the nature of contractual duties and promises rather than conditions precedent." *Matthieson*, 63 B.R. at 59. The court concluded ASCS's promise to pay bound it when the parties entered the contract, and found that ASCS's obligation arose prepetition. *Id.* at 60.

Gerth argues *Matthieson* does not consider the executory nature of contracts in a reorganization context. *See Walat Farms*, 69 B.R. at 532 (stating *Matthieson* "did not deal with executory contracts in a Chapter 11 setting" and assuming the *Matthieson* court reached its conclusion because executory contracts which are not timely assumed are deemed rejected and prepetition). However, the reasoning in *Matthieson* was reconfirmed in a Chapter 11 reorganization context in *Greseth v. Federal Land Bank of St. P. (In re Greseth)*, 78 B.R. 936 (D.Minn.1987). The *Greseth* court points out that the *Matthieson* court did not rely on reasoning which would restrict it to Chapter 7 cases. *Id.* at 942. Instead, *Matthieson* specifically held that the contract created mutual obligations binding the parties at the contract's formation. *Id.* Therefore, the reasoning in *Matthieson* is applicable to Chapters 11 and 12 reorganizations, and assumption of a contract does not cause the contract obligations to become postpetition. *See id.* The majority of the courts which have considered this issue have recognized the split between *Walat Farms* and *Matthieson*, and have followed *Matthieson*. They have held that assumption of a contract with ASCS/CCC does not change the time at which the obligations arose, but have examined the contracts at issue to determine whether the claims arose pre- or postpetition. *See, e.g., In re Allen*, 135 B.R. 856 (Bankr.N.D.Iowa 1992); *In re Affiliated Food Stores, Inc.*, 123 B.R. 747 (Bankr.N.D.Tex.1991); *In the Matter of Lundell Farms*, 86 B.R. 582 (Bankr.W.D.Wis.1988); *In re Ratliff*, 79 B.R. 930 (Bankr.D.Colo.1987); *Buske v. McDonald (In re Buske)*, 75 B.R. 213 (Bankr. N.D.Tex.1987).

■ We agree with *Matthieson* and the cases which follow it, and hold that mere assumption of an executory contract does not alter when the obligations under the contract arose. The CRP contracts between Gerth and ASCS contain provisions stating that the effective date of the contract is the date on which it is signed. If the CRP contract terms are such that ASCS's obligation to pay arose prepetition, then a holding by this court that simply assuming the contract causes the obligation to arise postpetition would have the effect of modifying those contract terms. 11 U.S.C. § 365, which governs assumption of executory contracts, contains nothing which would allow such a modification. "Neither the word 'assume' nor any other phrase in § 365 suggest that assuming a contract allows the debtor to do anything other than carry on with the contract according to its terms, including the provisions defining the effective date." *Allen*, 135 B.R. at 864.

Not only does § 365 fail to support such a modification, previous case law has established that when assuming a contract, the debtor assumes all the benefits and burdens of the contract. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984) ("Should the debtor in possession elect to assume the executory contract, however, it assumes the contract *cum onere....*"); *In re Steelship Corp.*, 576 F.2d 128 (8th Cir.1978) ("It is well settled that the trustee cannot accept the benefits of an executory contract without assuming its burdens as well."); *see also Public Serv. Co. of N.H. v. New Hampshire Elec. Coop., Inc. (In re Public Serv. Co. of N.H.)*, 884 F.2d 11, 14 (1st Cir.1989) ("If and when assumed, the contract operates according to its tenor."). Additionally, we note that when Gerth assumed the contracts, the bankruptcy court order stated "that the debtor shall accept and assume the responsibilities contracted for under his contract for the Conservation Reserve Program."

Gerth, as the debtor-in-possession, had the option under § 365 of rejecting the CRP contract. He evaluated the contract and assumed it as beneficial to the estate. Having assumed the contract to receive the benefits, he cannot now seek to avoid the

burdens. The benefit of receiving the CRP payments is accompanied by the burdens of the contracts, including the date the obligations of the contracts became effective.[4]

Therefore, we hold that Gerth's postpetition assumption of the executory CRP contracts does not cause ASCS's obligation to pay to become postpetition, but that the obligations arise under the contract as the parties originally agreed.

## B. Whether ASCS's Obligation Arose Prepetition

We next must examine the CRP contracts to determine whether, under the contracts as written, ASCS's obligation to pay arose prepetition. In order for an obligation to pay to arise prepetition, the debt must be "absolutely owed" prepetition. *Braniff Airways*, 814 F.2d at 1036.

Under the Bankruptcy Code, "debt" is defined as "a liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(5)(A). "Debt" should be read as being coextensive with the term "claim." *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *Torwico Elecs. v. New Jersey (In re Torwico Elecs.)*, 131 B.R. 561, 566 (Bankr.D.N.J. 1991). For setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed. *See Braniff Airways*, 814 F.2d at 1036.

The question then becomes: When did all the transactions necessary for ASCS's liability to Gerth occur? Gerth argues ASCS's obligation is not absolutely owed prepetition because the funding for payments under the CRP contracts must be appropriated each year from Congress. He notes that the contracts contain a clause which make ASCS's agreement to pay subject to availability of funds.[5] He claims that Congress' appropriation of the funds is a "necessary transaction" for ASCS's liability to arise each year, and the ten-year contracts are actually sets of ten one-year contracts. We disagree.

First, we note the contract terms indicate the parties intended the contracts to be ten-year contracts. A provision for liquidated damages in the event that Gerth should fail to perform his duties gives ASCS the right to terminate the contracts. If ASCS terminates the contract, "[Gerth] shall ... [f]orfeit all rights to payments ... and [r]efund all payments previously received...." Provision 18A(2).[6] Another provision explains the reason for liquidated damages, stating that ASCS is relying on the participant to perform during the entire contract period. Both the provision allowing ASCS to reach back to the beginning of the ten-year contract to recover past payments and the provision explaining the reason for liquidated damages demonstrate that ASCS was bargaining for a ten-year performance.

Second, dependency on a postpetition event does not prevent a debt from arising prepetition. "The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated or unmatured when debtor's petition is filed." *Braniff Airways*, 814 F.2d at 1036 (quoting *Stair v.*

---

**4.** The contract also incorporated a federal regulation allowing ASCS to set off debts owed the government against the CRP payments. By assuming the contract, Gerth also assumed the burden of the right of setoff.

**5.** The contract states:
CCC agrees:
1) Subject to the availability of funds to:
 a) Pay to the participant an annual rental payment for a period of years....

**6.** This provision states in pertinent part:

(1) If the participant fails to carry out the terms and conditions of this contract, CCC may terminate this contract.
(2) If this contract is terminated ... the participant will:
 (a) Forfeit all rights to payments under this contract; and
 (b) Refund all payments previously received together with interest ...; and
 (c) Pay liquidated damages....

*Hamilton Bank of Morristown (In re Morristown Lincoln–Mercury, Inc.),* 42 B.R. 413, 418–19 (Bankr.E.D.Tenn.1984)). A debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events. *See Sherman v. First City Bank of Dallas (In re United Sciences of Am., Inc.),* 893 F.2d 720, 724 (5th Cir.1990).

In this case, Gerth's claim—his right to payment—came into existence at the time the contract was signed and ASCS promised to pay him. That claim is contingent on Congress appropriating the necessary funds each year. Because a contingency does not change when a claim arises, Congress' appropriation of the funds is not a necessary transaction for ASCS's liability to arise.

Gerth also points out that he has obligations to perform each year under the CRP contracts,[7] suggesting that his performance is a necessary transaction for ASCS's liability to pay arises. He cites to *Gore,* which found ASCS's obligation under a contract to be not absolutely owed because the obligation to pay accrued only as the debtor-in-possession performed his contract obligations each year. *Gore,* 124 B.R. at 78. This argument is basically a suggestion that his performance is a condition precedent to ASCS's payment, and that this condition is a "necessary transaction" for ASCS's liability to arise. This argument also is flawed.

 We first note that contracts should be construed with a preference for finding mutual promises rather than conditions. Restatement (Second) of Contracts § 227(2) and cmt. d (1982); *see Allen,* 135 B.R. at 865. A promise is an assurance from one party that performance will be rendered in the future, given in a manner

that the other party could rely on it. 3A Corbin on Contracts § 633, at 32. A condition, however, makes the duty of one party dependent upon performance by the other. *Id.* It creates no rights or duties in and of itself, but only limits or modifies rights or duties. *In re Lee,* 35 B.R. 663, 665 (Bankr. N.D.Ohio 1983) (citing S. Williston, A Treatise on the Law of Contracts, § 663 (3d ed. 1961)).

Examination of the CRP contracts demonstrate they are in the form of mutual promises, not conditions precedent. Under the contract, each party agreed to perform certain duties: Gerth "must," *inter alia,* place land into the Conservation Reserve Program for ten years, and establish and maintain a vegetative cover on the land. Provision 3A. ASCS "agrees," *inter alia,* to pay Gerth an annual rental payment. Provision 3B. The contracts also state the terms of the contract—that Gerth "must" and ASCS "agrees"—are effective when signed by the parties. The contracts contain no language which indicates that the duties of either party is a condition for performance of the other party's duties.

Another provision explains the reason liquidated damages are assessed in the event Gerth breaches the contract. This provision states that after the parties enter the contract, ASCS will be relying on the participants in the CRP program to perform their obligations. Provision 23(A)(3). By entering the contract, Gerth agreed that he "must" perform, thus assuring ASCS he would perform and inducing ASCS's reliance. This provision indicates in a definitive manner that Gerth and ASCS intended the contract as an exchange of promises. *See* 3A Corbin on Contracts § 633, at 32 (stating that an expression intended to be an assurance of perfor-

---

7. Gerth's continuing obligations under the contract are basically to maintain the vegetative cover on the land, comply with noxious weed laws, and annually file forms. Gerth must also refrain from actions such as allowing grazing, harvesting, or other commercial use of the forage or trees, and refrain from other actions that would defeat the purpose of the contract. ASCS submitted an affidavit from the ASCS county executive director who administers Gerth's CRP contracts stating that "only minimal operations" are necessary for Gerth to meet these obligations. On appeal, Gerth argues that his obligations are not minimal. We cannot consider this allegation because Gerth failed to submit any evidence to support it in the courts below. In any event, whether the obligations are minimal or not is irrelevant, as the terms of the contract, not how much Gerth will perform postpetition, indicate when ASCS's obligations arise.

mance given in a manner inducing reliance by the other party is a promise).

We conclude that ASCS and Gerth exchanged mutual promises to perform. *Accord Matthieson*, 63 B.R. at 59–60 *Allen*, 135 B.R. at 864–66.[8] ASCS was bound by its promise when it entered the contract; Gerth's performance is not a condition for ASCS to be bound to its promise to pay. Therefore, his performance is not a necessary transaction for ASCS's liability to arise.[9]

In summary, all transactions necessary for ASCS's liability under the CRP contract took place upon execution of the contract and entry of Gerth's land into the program. Therefore, ASCS's debt was absolutely owed and arose prepetition, satisfying the first requirement for the right of setoff under § 553.

### C. Mutuality

Gerth next claims that the requirement of mutuality is not met. Gerth contends that the debtor and the debtor-in-possession are different entities, and that he assumed the CRP contracts postpetition as the debtor-in-possession. Therefore, he reasons, ASCS's claim is against him as the debtor, and ASCS's debt is to him as the debtor-in-possession, destroying mutuality. Whether the debtor and the debtor-in-possession are the same entity for purposes of mutuality under 11 U.S.C. § 553 also is a matter of first impression by this circuit.

Whether the "different entity" theory is still viable in any context is questionable. The Supreme Court, when discussing enforceability of collective bargaining agreements against a debtor-in-possession, stated that if the debtor-in-possession

were a wholly 'new entity,' it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts,

since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing.

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). Courts which discuss this language from *Bildisco* have disagreed about the effect it has on the different entity theory. Some courts have found that *Bildisco* has entirely invalidated the theory that the debtor and the debtor-in-possession are different entities. *See, e.g., Allen*, 135 B.R. at 868 (stating *Bildisco* language is unambiguous and was intended to put a stop to the distinction between the debtor and debtor-in-possession); *In re Ontario Locomotive & Ins. Ry. Supplies*, 126 B.R. 146, 147 (Bankr.W.D.N.Y.1991) (stating the *Bildisco* Court "would appear to have laid to rest the 'separate entity' doctrine for all time"); *Affiliated Food Stores*, 123 B.R. at 748–49 (discussing *Bildisco* and citing cases rejecting theory). The *Allen* and *Affiliated Food Stores* courts specifically rejected the "different entity" theory in § 553 setoff cases.

Other courts which have continued to subscribe to the different entity theory have limited *Bildisco*, *see, e.g., Patton v. John Deere Co. (In re Durham)*, 87 B.R. 300, 302 (Bankr.D.Del.1988), *aff'd*, 100 B.R. 711 (1989) (limiting *Bildisco* to § 365 cases), or have applied the theory in a different context and have not discussed *Bildisco*, *see, e.g., In re West Elecs., Inc.*, 852 F.2d 79, 82–83 (3d Cir.1988) (discussing whether debtor-in-possession is entitled to assume government contract under 41

---

**8.** Gerth argues *Allen* is poor support because a portion of the case was decided on the basis of Iowa contract law. We note, however, that the *Allen* court used general contract principles and the terms of the contract to determine that the contract was based on mutual promises.

**9.** The *Matthieson* court stated that even if the contracts at issue had been in the form of condi-

tions precedent, ASCS's obligations were binding from the inception of the contract. The court noted that a condition precedent does not affect formation of the contract. It stated that the contract remains in existence when a party fails to satisfy a condition precedent, but performance cannot be compelled. *Matthieson*, 63 B.R. at 60.

U.S.C. § 15). *Walat Farms* and the cases following it also found the debtor-in-possession to be a new entity, but did not discuss the language concerning this theory in *Bildisco.* *See Gore,* 124 B.R. at 78; *Evatt,* 112 B.R. at 413–14; *Walat Farms,* 69 B.R. at 531.

▮▮▮ Although we do not decide the broad issue of whether the different entity theory is not viable in any context, we find the discussion in *Allen* concerning its application in the instant context persuasive. *See Allen,* 135 B.R. at 868–69. We hold that when a debtor-in-possession assumes an executory contract, the debtor and the debtor-in-possession are the same entity for purposes of mutuality under § 553.

We first note that use of the term "debtor-in-possession" in the Bankruptcy Code supports our holding. *See* 11 U.S.C. § 1101(1) (" 'debtor-in-possession' means debtor"). Second, in *Bildisco,* the Supreme Court explicitly considered the different entity theory in terms of executory contracts and 11 U.S.C. § 365, which governs assumption of executory contracts. In this context, the *Bildisco* Court stated the debtor and the debtor-in-possession are the same entity. If the debtor and the debtor-in-possession are the same entity for purposes of an executory contract under § 365, we see no logical reason to consider them different entities when examining an executory contract for purposes of setoff under § 553 after that contract has been assumed under § 365.

Third, if the different entity theory were applicable in a § 553 context, every assumed executory contract would automatically fail to satisfy the requirement of mutuality. Congress intended to preserve setoff rights by enacting § 553. *See Cohen v. Savings Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Management),* 896 F.2d 54, 57 (3d Cir.1990). Nothing in the language of § 553 indicates Congress intended to limit the right of setoff to cases not involving executory contracts. *See Allen,* 135 B.R. at 868–69.

Finally, our holding that the debtor and the debtor-in-possession are the same entity allows § 553 to be interpreted in a manner that gives the entire statute meaning. The plain language of § 553 already prohibits setoff unless the debt owed by the creditor arises prepetition. In other words, it prohibits setoff if the debt is owed to the debtor-in-possession at the time the obligation arises. If the requirement of mutuality were interpreted to prevent setoff based on a distinction between the debtor and the debtor-in-possession, the prepetition requirement would be meaningless.

▮▮▮ Because the debtor and the debtor-in-possession are the same entity, we conclude that the mutuality requirement under § 553 deals with the question of whether the creditor who absolutely owed the debtor prepetition is the same party asserting setoff. *See Bevill, Bresler & Schulman,* 896 F.2d at 59; *Allen,* 135 B.R. at 869. This interpretation gives the mutuality requirement independent meaning, while preventing it from rendering meaningless the requirement that the debt owed by the creditor arise prepetition.

Applying this interpretation to the facts before us, we hold that the mutuality requirement is met. ASCS is the party who absolutely owed Gerth prepetition, and is the same party asserting setoff.

### III. CONCLUSION

▮▮▮ In summary, we find that both ASCS's debt to Gerth and its claim against Gerth arose prepetition and are mutual obligations. All the requirements of § 553 are met, and ASCS has established its right to setoff under this section. Therefore, we vacate the bankruptcy court's order denying ASCS's motion for modification of automatic stay and for setoff, and remand for determination of whether ASCS is entitled to relief from the automatic stay under 11 U.S.C. § 362.

HEANEY, Senior Circuit Judge, dissenting.

In my view, this case was correctly decided by the bankruptcy court and the district court. I would affirm on the basis of the well-reasoned opinion of the bankruptcy court. It is important to add that if the position of the ASCS is sustained in this

case and similar ones, it will be difficult, if not impossible, for most grain farmers who run into financial difficulties to take advantage of Chapter 12 of the Bankruptcy Act to restructure their debt, an advantage that Congress intended that they should have.

I realize that the majority leaves open the possibility of the debtor's plan still being confirmed pursuant to 11 U.S.C. § 362 if the district court finds that the effect of allowing the offset will be to prevent the plan from being confirmed. On the basis of the record before us, I believe this to be the case, and I agree with the majority that it is the district court's right to make this decision initially.