FILED

APR 26 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RS AIR, LLC,<br><br>                     Debtor. | BAP No. NC-21-1080-TBG<br><br>Bk. No. 20-51604 |
| RS AIR, LLC,<br><br>                  Appellant,<br>v.<br>NETJETS SALES, INC.; NETJETS<br>AVIATION, INC.; NETJETS SERVICES,<br>INC.,<br><br>                  Appellees. | MEMORANDUM¹ |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: TAYLOR, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 11² debtor RS Air, LLC appeals the bankruptcy court's order

granting creditors NetJets Sales, Inc., NetJets Aviation, Inc., and NetJets

---

¹ This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

² Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal
Rules of Bankruptcy Procedure.

Services, Inc. (collectively, "NetJets") relief from the automatic stay to setoff mutual debts under § 553(a) and Ohio law. We discern no abuse of discretion. Accordingly, we AFFIRM.[3]

## FACTS[4]

### A.     Prepetition events

Pre-petition, RS Air purchased one-sixteenth interests in two aircraft, a Citation X and an Encore+, from NetJets. With each, the parties executed several agreements. Those are valid and binding. Each contains an Ohio choice-of-law provision.

After the Citation X crashed, RS Air desired to end the relationship, offering to sell its fractional interests in both airplanes back to NetJets pursuant to the agreements' terms. NetJets also wished to repurchase the interests, and the parties began negotiations. Unable to reach a consensus, NetJets eventually sued RS Air in Ohio state court (the "State Court Action"). There, it sought to force specific performance of the sale and

---

[3] The bankruptcy court's order both granted stay relief to allow setoff and adjudicated the merits of setoff. In some circumstances, that might be error. *See Arkison v. Griffin (In re Griffin)*, 719 F.3d 1126, 1128 (9th Cir. 2013) ("A proceeding to determine eligibility for relief from a stay only determines whether a creditor should be released from the stay in order to argue the merits in a separate proceeding."). However, RS Air does not raise the issue. And it waived the argument by consenting to indeed, requesting the procedure below. *See* Trial Tr. 15:6–21, Feb. 25, 2021.

[4] A more fulsome recitation of the parties' relationship and attendant facts is set forth in our concurrent disposition of Netjets' appeal of the confirmation order. Below are the facts most relevant to this appeal. All are undisputed. We also exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293

2

repurchase and to recover unpaid fees for services performed and damages.

**B.     RS Air's bankruptcy, plan, and stay relief proceedings**

RS Air's Chapter 11 filing stayed that proceeding.[5] Shortly after, NetJets filed a $2,133,363 proof of claim. It stems from the rights and obligations asserted in the State Court Action. Notably, no party has objected.

After, NetJets moved for § 362(d) stay relief to continue the State Court Action and to set off the funds it owes RS Air for the repurchase of the fractional interests and operating fund credits against its proof of claim. RS Air opposed. The bankruptcy court found NetJets established a right to setoff and granted stay relief. RS Air timely appealed.

Sometime later, RS Air filed a third amended Chapter 11 plan. Pertinent to the present discussion, it provides: "Upon confirmation . . . the claim of NetJets . . . will be deemed allowed as filed and the Debtor's

---

B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[5] Its bankruptcy schedules disclose the State Court Action and assert that any claim arising therefrom is "unliquidated, disputed, [and] subject to setoff." Although the Ninth Circuit has not decided whether bankruptcy schedules constitute judicial admissions, we have noted that statements in bankruptcy schedules carry evidentiary weight, and there exists a substantial body of case law holding that they amount to binding judicial admissions. *Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 436 (9th Cir. BAP 2005) ("Debtors' admissions in their bankruptcy schedules can be binding . . . ." (citing *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 431 (9th Cir. BAP 2005)); *see also In re Rolland*, 317 B.R. 402, 421–23 (Bankr. C.D. Cal. 2004) (collecting cases). NetJets did not raise the issue here or below and so it is not considered further.

counterclaims will be deemed waived." That plan was eventually confirmed.[6] As well, NetJets repurchased the Citation X and Encore+ aircraft interests from RS Air for $385,692.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in granting § 362(d) stay relief to allow setoff.

## STANDARDS OF REVIEW

We review a bankruptcy court's order granting relief from the automatic stay for an abuse of discretion. *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 919 (9th Cir. BAP 2009). We also review a bankruptcy court's allowance of setoff for abuse of discretion. *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 236 (9th Cir. BAP 1991). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any ground fairly supported by the record. *Wirum v. Warren (In re Warren)*, 568 F.3d 1113, 1116 (9th Cir. 2009).

---

[6] Netjets appealed the bankruptcy court's confirmation order. We affirm that determination concurrently by separate order.

4

## DISCUSSION

### A. The applicable legal standards[7]

#### 1. Relief from stay

Section 362(d)(1) provides that the bankruptcy court may grant relief from the automatic stay upon a showing of "cause." *See* § 362(d)(1). "Cause" is undefined in the Bankruptcy Code. *See* § 101. Rather, it is a discretionary determination made on a case-by-case basis. *See In re Kronemyer*, 405 B.R. at 921. However, "by establishing a right of setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under § 362(d)(1)." *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. BAP 2009) (quotation omitted), *aff'd*, 603 F.3d 1100 (9th Cir. 2010).

#### 2. Setoff

Setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Newbery Corp. v. Fireman's Fund Ins.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995)).

Subject to exceptions not applicable here, § 553 provides that bankruptcy does "not affect any right of a creditor to offset a mutual debt

---

[7] RS Air does not dispute that the bankruptcy court identified and applied the correct legal standard. Thus, our review is limited to whether the bankruptcy court's findings are illogical, implausible, or without support from the record. *See Trafficschool.com, Inc.*, 653 F.3d at 832.

owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case[.]" § 553(a). So first, a creditor must demonstrate a right of setoff under nonbankruptcy law. *Biggs v. Stovin (In re Luz Int'l, Ltd.)*, 219 B.R. 837, 843 (9th Cir. BAP 1998). Setoff under the applicable Ohio law "is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. S. Side Bldg. & Loan Ass'n of Lima*, 15 N.E.2d 149, 150 (Ohio 1938).

If the state law right is established, the party seeking settoff must also establish it should be preserved in bankruptcy under § 553. *In re Luz Int'l, Ltd.*, 219 B.R. at 843. Setoff under § 553 requires the movant to prove timing and mutuality. *In re Buckemaier*, 127 B.R. at 238 (citing *Verco Indus. v. Spartan Plastics (In re Verco Indus.)*, 704 F.2d 1134, 1139 (9th Cir. 1983)). Under the timing prong, the claim sought to be offset must have arisen before the filing of the bankruptcy petition. *United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 594 (9th Cir. BAP 2007) (quoting *Newbery Corp.*, 95 F.3d at 1398). The mutuality prong requires the pre-petition debts be in the same right, between the same individuals, standing in the same capacity. *In re Luz Int'l, Ltd.*, 219 B.R. at 845.

**B.     The bankruptcy court did not abuse its discretion in granting stay relief to allow NetJets to set off its debt to RS Air**

RS Air argues that the bankruptcy court erred in granting stay relief

by finding that NetJets established the right under both § 553 and Ohio law. In RS Air's opinion, these flaws mandated denial of stay relief and thus require reversal. We disagree.

**1.     The bankruptcy court did not err in determining that NetJets established a right to setoff under § 553.**

RS Air first challenges the bankruptcy court's determination that NetJets established a right to setoff under § 553. It argues NetJets' claim arose pre-petition and its claim post-petition so the debts are not mutual. While RS Air entitles its challenge one of mutuality, it is really of timing.[8] This requirement arises from, and so is analyzed under, the Bankruptcy Code and federal law. *See In re Wade Cook Fin. Corp.*, 375 B.R. at 595.

The Code defines "debt" as a "liability on a claim." § 101(12). And it defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" § 101(5). The term "'[d]ebt' should be read as being coextensive with the term 'claim.'" *In re Wade Cook Fin. Corp.*, 375 B.R. at 595 (quoting *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993)). Together, "debt" and "claim" "encompass virtually any type of obligation reducible to some monetary equivalence." *In re Luz Int'l*, 219 B.R. at 844

---

[8] RS Air does not dispute that the debts are in the same right and between the same individuals standing in the same capacity. Rather, it contends that one debt arose pre-petition and the other post-petition, so the timing element is not satisfied. We thus address only that requirement.

(quotation omitted).

It is insignificant that RS Air characterizes the obligation presently at issue as contingent on completion of the repurchase or unliquidated. It is undisputable that NetJets' right to repurchase and RS Air's consequential right to payment is an obligation reducible to some monetary equivalence. It is consequently a "debt" or "claim" and therefore qualifies for setoff so long as it arose pre-petition. *Id*.

"For setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed." *Gerth*, 991 F.2d at 1433. The question before us is thus: When did all the transactions necessary for NetJets' obligation to pay RS Air for the fractional aircraft interests' repurchase occur?[9]

RS Air argues that NetJets' debt arose post-petition because: (1) the parties' agreements create a repurchase option; (2) NetJets did not exercise that option until after RS Air filed for bankruptcy; and (3) the post-petition exercise of an option cannot be set off against a pre-petition debt. This argument is unavailing.

The relevant provision of each aircrafts' purchase agreement

---

[9] RS Air's claim (and NetJets' debt) is for: (1) the proceeds from NetJets' repurchase of the fractional aircraft shares; and (2) operating fund credits arising from RS Air's participation in NetJets' fractional ownership program. RS Air does not disagree that its entitlement to the operating fund credits arose pre-petition. Instead, its assignment of error is limited only to the bankruptcy court's determination that NetJets'

provides:[10]

> [RS Air] hereby acknowledges and agrees that [NetJets] shall have the right and option, in addition to any other remedies [NetJets] may be entitled to, upon a material default by [RS Air] under any of the Operative Documents which results in the termination of the Management Agreement by [NetJets] or expiration of the Management Agreement in accordance with its terms, [to] repurchase [RS Air's] Interest in the Aircraft for the then Fair Market Value of the Aircraft multiplied by the percentage equivalent of the interest . . . .

> In the event of a repurchase of [RS Air's] Interest hereunder, [NetJets] shall have ninety (90) days after receipt or giving of such notice to cause the repurchase to occur . . . .

So NetJets' debt to RS Air accrued upon: (1) either (a) RS Air's material default under the parties' agreements; or (b) expiration of the management agreement by its terms; and (2) NetJets' election to repurchase. At that point, either could seek specific performance.

Both the Citation X's and the Encore+'s management agreements were negotiated, drafted, executed, and expired by their term pre-petition.

---

repurchase of the aircraft shares is a pre-petition obligation.

[10] To the extent RS Air asserts that the Citation X interest's repurchase is governed by paragraph 20, that provision weakens rather than strengthens its argument. The Citation X crashed in July 2017. Sometime after, but long before RS Air's bankruptcy filing, NetJets declared the airplane a total loss. Under paragraph 20, NetJets had 30 days to elect to replace the aircraft. If it did not exercise the replacement option, paragraph 20 mandates without option that NetJets repurchase RS Air's Citation X interest. RS Air does not contend that NetJets ever exercised the replacement option. So, upon expiration of 30 days, its obligation to repurchase (and the resultant debt) became absolutely owing. And it is undisputable that this occurred pre-petition.

The expiration of each, followed by NetJets' letter seeking to repurchase the shares, triggered its right of repurchase. RS Air apparently also sought to cause the repurchase and the parties began negotiating terms. After that failed, NetJets initiated the State Court Action seeking specific performance of the sale. All of these events took place long before RS Air filed for bankruptcy in November 2020.

Because all transactions necessary for liability are firmly rooted indeed, occurred in the parties' pre-petition dealings, the resultant debt arose pre-petition.

RS Air argues against this result for two reasons. First, it contends that because the transaction was ultimately not consummated until after filing, the obligation transforms from pre-petition to post-petition. This, it says, is because the debt was contingent or unliquidated. RS Air's argument is misplaced.

"Dependency on a postpetition event does not prevent a debt from arising prepetition." *In re Wade Cook Fin. Corp.*, 375 B.R. 595 (quoting *Gerth*, 991 F.2d at 1433). And "[t]he character of a claim does not transform from prepetition to postpetition because that claim is contingent, unliquidated or unmatured when the debtor files its petition." *Id.* (citing *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987)). Thus, a "debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events." *Gerth*, 991 F.2d at 1434. The fact that the transaction was not consummated until after

10

RS Air's filing does not transform the debt into a post-petition one. *See Id.*

Second, RS Air argues that even if NetJets had a right that accrued pre-petition, it was forfeited by expiration, waiver, or excusal. It provides little analysis of these arguments, likely constituting waiver.[11] Because they may be substantively denied, however, we briefly address each in turn.

RS Air's first argument that NetJets' repurchase right expired pre-petition, is no longer enforceable, and so cannot be setoff hinges on the assertion that NetJets failed to consummate the transaction within the 90 days contemplated under paragraph 6 of the purchase agreements. This argument is flawed for at least two reasons.

One, the record supports the bankruptcy court's conclusion that NetJets took all necessary steps to timely cause the repurchase, including suing RS Air for specific performance. Two, in Ohio, the general rule as to contracts is that time of performance is not of the essence unless the parties include an express stipulation or such requirement can be implied from the entire nature or circumstances of the contract. *Franklin Mgmt. Indus., Inc. v. Far More Props., Inc.*, 25 N.E.3d 416, 421 (Ohio. Ct. App. 2014) (citations

---

[11] Failure to "specifically and distinctly" address issues in an opening brief is a waiver. *See Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004). Contentions must be accompanied by reasons. *See Indep. Towers of Wash v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) ("'[A] bare assertion of an issue does not preserve a claim'" rather "[w]e require contentions to be accompanied by reasons.") (quoting *D.A.R.E. Am. v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001)). "We cannot 'manufacture arguments for an appellant.'" *Id.* at 929 (citing *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). If an argument is not properly argued and explained, the argument is waived. *Id.*

omitted). Here, neither purchase agreement expressly makes time of the essence. Nor can such a requirement be implied from the nature or circumstances of the contract; to do so would allow RS Air to effectively destroy NetJets' repurchase right through its own hinderance or delay. That would be inimical to the nature and circumstances of a contract expressly reserving that right.

Next, nothing in the record supports RS Air's argument that NetJets waived its right to repurchase the shares. Almost simultaneously to the Citation X and Encore + management agreements' expiration, NetJets informed RS Air of its desire and intention to repurchase each aircraft's fractional interest. The parties then negotiated the repurchase. And when those discussions failed, NetJets sought to compel the repurchase by bringing the State Court Action. It prosecuted its case up to trial when RS Air's bankruptcy filing stayed the action. So, the bankruptcy court's finding that NetJets never acted inconsistently with its intent to claim its right to force the repurchase is well supported.

Finally, RS Air's argument that NetJets' conduct excused its performance is unavailing. The bankruptcy court found that nothing in the record supported a finding that NetJets had prevented either party's performance. RS Air fails to address, let alone establish, how this was in error. For that reason, the argument is rejected.

In sum, NetJets' debt to RS Air was absolutely owing pre-petition. The fact that the repurchase was not completed until post-petition does not

change this result. And none of RS Air's thinly argued contentions regarding expiration, waiver, or excusal of the repurchase right are meritorious. The bankruptcy court did not abuse its discretion in determining that NetJets established a right to setoff under § 553.

**2.     The bankruptcy court did not err in determining that NetJets established a right to setoff under Ohio law.**

Second, RS Air challenges the bankruptcy court's determination that NetJets established a right to setoff under Ohio law as neither claim has been liquidated. This, it avers, is violative of Ohio's requirement that each party owe a "definite amount" to the other.

The bankruptcy court determined that it was insignificant that neither claim or debt has been liquidated in the traditional sense, meaning reduced to judgment. It noted that there was no dispute as to either the liability or the amount owed by each party to the other here. That is, RS Air had not objected to NetJets' proof of claim giving it presumptive validity. And NetJets consented to the value of RS Air's claim. So it found that debts were sufficiently definite. We agree.

There is a dearth of caselaw on the issue of what satisfies the "definite amount" element of setoff. Many cases recite the language, which stems from *Witham*, 15 N.E.2d at 150. But we can find none which analyze or discuss what does or does not qualify. Nonetheless, we analyze the issue as it is presented by RS Air on appeal: whether the parties' debts are in a "definite amount" where neither has been reduced to judgment.

As to NetJets' claim, neither party disputes the validity or amount. NetJets timely filed its $2,133,623.15 claim. Proof of Claim No. 1-1. A properly filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Rule 3001(f). The claim "is deemed allowed unless a party in interest objects." *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). To date, no party has objected to NetJets' claim. It is therefore deemed allowed and presumptively valid as to its nature and amount.[12] For that reason, the bankruptcy court did not abuse its discretion in determining NetJets' claim was in a "definite amount" for purposes of setoff under Ohio law.

The debt owed to RS Air is sufficiently definite for the same reason and more. There is no dispute over liability or amount. That is, the parties agree that NetJets owed RS Air something for the aircrafts' fractional interests. This is readily evidenced by their negotiations, the State Court Action, and their conduct in the bankruptcy case. Although there appears to have been some dispute over the amount of that debt, NetJets was willing to and did concede to RS Air's own valuation. So as with RS Air's debt to NetJets, this one too is undisputed as to validity or amount. Without dispute, the bankruptcy court did not abuse its discretion in

---

[12] Further, RS Air's third amended plan expressly provides that "[u]pon confirmation the claim of NetJets . . . will be deemed allowed as filed and [RS Air's] counterclaims will be deemed waived." That plan was confirmed on October 7, 2021. We now affirm that ruling in a separate decision. On RS Air's own admission then, NetJets' claim is now liquidated and undisputed.

14

determining that the debt was in a "definite amount" for setoff purposes.

Further, we do not see that NetJets' debt is in fact unliquidated as RS Air claims. In Ohio, "[a] liquidated claim is one that can be determined with exactness from the agreement between the parties or by arithmetical process or by the application of definite rules of law." *Huo Chin Yin v. Amino Prods. Co.*, 46 N.E.2d 610, 613-14 (Ohio 1943) (citations omitted). And a claim may be considered liquidated, even if it is disputed or where one party may assert counterclaims or defenses to payment. *Id.* at 614.

Here, the amount of NetJets' debt to RS Air can be determined with exactness from the parties' agreements and by mathematical formula. Specifically, paragraph 6 of the aircrafts' purchase agreements provides that NetJets may repurchase the interests for "the then Fair Market Value of the Aircraft multiplied by the percentage equivalent of [RS Air's] Interest[.]" Because of this, RS Air's challenge must fail.

*Dunkin's Diamonds, Inc. v. Chavis*, the lone case cited by RS Air on appeal in support of its argument, does not save it. In determining whether setoff was appropriate, the *Dunkin's* Court noted that the definite amounts requirement was satisfied where one party admitted it owed the other a sum certain debt under the parties' agreement and the other debt had been previously liquidated. No. 12CVH-10776, 2015 Ohio Misc. LEXIS 22969, at *67–68 (C.P., May 18, 2015). The facts of this case are analogous. NetJets admits that it owes RS Air a debt ascertainable by reference to the aircrafts' purchase agreements and mathematical formula. Notably, the parties have

apparently already undertaken application of that formula and reached a result. And neither party can now dispute the validity and amount of RS Air's debt to NetJets. Thus, *Dunkin's* supports, rather than contradicts, the bankruptcy court's decision.

Accordingly, the bankruptcy court did not abuse its discretion in determining NetJets established its right to setoff under Ohio law.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order granting § 362(d) stay relief.