In re Kathy L. WISNIEWSKI, Debtor.

John J. Hunter, Trustee, Plaintiff,

v.

Key Bank National Association, et al., Defendants.

Nos. 00–3122, 99–35288.

United States Bankruptcy Court, N.D. Ohio.

May 29, 2001.

John J. Hunter, Sr., Toledo, OH, pro se.

Mark R. Tantari, Toledo, OH, Louis J. Yoppolo, Toledo, OH, for defendants.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judgment, Memorandum in Support, and Response to the Defendant's Motion for Summary Judgment; and the Defendant's Cross Motion for Summary Judgment and Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment. Also pending are the Debtor's Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment, and the Debtor's Cross Motion for Summary Judgment and Memorandum in Support. The Court has now had the opportunity to review the arguments of the respected Parties, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be DENIED; that the Defendant's Motion for Summary Judgment should be GRANTED; and that the Debtor's Cross Motion for Summary Judgment should be GRANTED to the extent that it determines the validity of the Bank's perfected security interest.

## FACTS

The relevant facts in this case are straightforward. Kathy L. Wisniewski (hereinafter referred to as the "Debtor") was the sole proprietor of two businesses: "Unravel Travel" which was established in 1994 and located at 5552 Secor Rd., Suite 1, Toledo, Ohio; and "Cherry Cheeks" lo-

cated at 5552 Secor Rd., Suite 2, Toledo, Ohio. The Debtor began doing business as "Cherry Cheeks" tanning salon in 1998.

In order to finance her business, "Unravel Travel," the Debtor took out a line of credit with the Defendant, Key Bank National Association (hereinafter referred to as the "Bank") in July of 1996 for Ten Thousand dollars ($10,000.00). To collateralize this loan, the Debtor signed a security agreement with the Bank granting a security interest in the Debtor's property. The terms of this security interest provided that it would encompass accounts, chattel paper, and the inventory of "Unravel Travel." To perfect this security interest, the Bank filed a financing statement locally with the county recorder and with the Secretary of State. On the Bank's financing statement, the Debtor was listed as "Kathy Wisniewski d.b.a., Unravel Travel" at "5552 Secor Rd., Suite 1."

Approximately two years later, the Debtor sought further financing for her businesses, thereafter obtaining, in October of 1998, a loan from the Bank in the amount of Twenty Thousand Seven Hundred dollars ($20,700.00). Part of these proceeds were then used by the Debtor to procure tanning beds, a computer and certain miscellaneous items for her business, "Cherry Cheeks." (At the time of the Debtor's bankruptcy petition, it appears that the physical location of this property was at the Debtor's Cherry Cheeks business in Suite 2.) As security for this loan, the Bank obtained from the Debtor a signed security agreement and financing statement listing as collateral "[a]ll inventory, chattel paper, accounts, *equipment*, and general intangibles." (Emphasis added). The Debtor's name and address on this second financing statement mirrored the entry on the first financing statement filed two years prior with, however, one minor exception: the Suite number identifying the Debtor's business address was listed as Suite 2 instead of Suite 1.

On December 23, 1999, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, on June 9, 2000, the Plaintiff–Trustee (hereinafter referred to as the "Trustee") initiated a cause of action praying that the Bank's lien relating to the Debtor's tanning beds, computer and related items be avoided and set aside pursuant to 11 U.S.C. § 544(a)(1). Following this action, the Trustee filed a Motion for Summary Judgment, arguing that the Bank failed to properly perfect its security interest in the Debtor's equipment. In opposition thereto, the Bank filed a Cross Motion for Summary Judgment, arguing that their financing statement covering the tanning beds, a computer and miscellaneous items was adequately perfected. Along this same line, the Debtor, after filing an adversary complaint which was later combined with the present adversary proceeding, filed a Cross Motion for Summary Judgment arguing that the Bank's security interest was validly perfected.

### LAW

**Section 544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

**1309.39 Formal Requisites of Financing Statements**

(A) A financing statement shall state the names of the debtor and the secured party, be signed by the debtor, give an address of the secured party from which information concerning the security interest may be obtained, give a mailing address of the debtor, and include a statement indicating the types, or describing the items, of collateral.

(F) A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of the partners.

(G) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

### DISCUSSION

Determinations as to the validity, extent, or priority of liens in a bankruptcy case are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(K). Thus, this case is a core proceeding.

The instant case has been brought before the Court upon the Parties' Cross Motions for Summary Judgment. Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056, sets forth the standard for a summary judgment motion and provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With respect to this standard, the movant must demonstrate all the elements of his cause of action. *R.E. Cruise Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir. 1975). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in cases such as this where the Parties have filed Cross Motions for Summary Judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *French v. Bank One, Lima N.A. (In re Rehab Project, Inc.)*, 238 B.R. 363, 369 (Bankr.N.D.Ohio 1999).

In the instant case, the Trustee seeks to avoid the Bank's security interest in the Debtor's property pursuant to 11 U.S.C. § 544(a)(1). This section, which is commonly referred to as the strong-arm clause, vests the bankruptcy trustee, as of the commencement of a bankruptcy case, with the rights and powers of a judgment lien creditor under applicable state law. *Walker v. Elam (In re Fowler)*, 201 B.R. 771, 779 (Bankr.E.D.Tenn.1996). The effect of this section is that any security interest that is not properly perfected may be avoided by the bankruptcy trustee, if a judgment lien creditor would have prevailed against that creditor under applicable state law. In accordance with this section, the substantive issue presented in this case is whether, for purposes of Ohio law, the Bank validly perfected its security

interest in the Debtor's tanning beds, computer and other miscellaneous items.[1]

Under Ohio law, a security interest is normally perfected by the creditor filing a financing statement in the location provided for by law; the purpose of which is to provide notice to potential creditors of not only the actual security interest, but also of what type of collateral is potentially covered by the security agreement. *Maurer v. Port Feed Mill, Inc.*, 71 Ohio App.3d 200, 205, 593 N.E.2d 337 (Ohio Ct.App.1991). In accordance with this notice function, the Trustee has set forth what, in his view, are three fatal defects in the Bank's financing statement: (1) the financing statement misidentified the location of the business assets upon which the Bank claims a lien; (2) the Bank's financing statement failed to sufficiently describe the nature of the Bank's business assets; and (3) the Bank's financing statement failed to generally describe the category of the assets upon which the Bank claims a security interest. (Trustee's Memorandum in Support of Motion for Summary Judgment, page 4). Before addressing these assertions, however, the Court feels that it must clarify what seems to be a point of contention between the Parties; namely which financing statement—the first or the second—is the operative financing statement as it relates to the

Bank's security interest in the Debtor's property. In this regard, the arguments the Trustee has put forth in support of his position appear to relate, at least in part, to the first financing statement filed by the Bank in 1996. However, as correctly pointed out by the Bank and the Debtor, the second financing statement, being later in time, is the operative financing for purposes of determining whether the Bank has a validly perfected security interest in the Debtor's tanning beds, computer and other miscellaneous equipment. *See* O.R.C. § 1309.22(B). Accordingly, for purposes of addressing the points of contention raised by the Trustee, the Court will limit its analysis to the second financing statement filed by the Bank.

■ The Trustee's first point of contention—whether the Bank's financing statement misidentified the location of the business assets upon which the Bank claims a lien—concerns the improper trade name the Bank placed on its financing statement.[2] In this regard, the uncontested facts of this case show that the Debtor's address on the second financing statement contained the trade name, "Unravel Travel," notwithstanding the fact that the collateral secured by the second financing statement was, at least in part, located at the Debtor's business, "Cherry Cheeks."

---

1. The Debtor, in her Memorandum in Opposition to the Trustee's Motion for Summary Judgment, while vehemently arguing that the Bank's security interest in the Debtor's property was properly perfected, seemingly denies that she intended to give the Bank a security interest in her property. Such legal arguments are totally inconsistent with one another, and thus the Court finds, for purposes of this case, that the Debtor is estopped from arguing that she did not intend to grant the Bank a security interest in her business property.

2. The Trustee has also asserted that the Bank's financing statement is invalid because it contained an improper address. Specifically, the Trustee contends that the address for the collateral at issue in this case was listed as Suite 1 instead of Suite 2. However, a review of the applicable financing statement shows that the Bank's second financing statement specifically stated that the Bank's collateral was located at Suite 2. In addition, even if this were not the case, Ohio law does not require that a financing statement give the address of the debtor at which the collateral is located. Instead, O.R.C. § 1309.39(A) simply provides that a "financing statement shall ... give a mailing address of the debtor[.]"

Thus, the question presented here is whether the inclusion in a financing statement of a sole proprietor's improper trade name would render that financing statement, under Ohio law, ineffective. To answer this question, the Court looks to Section 1309.39 of the Ohio Revised which governs the formal requirements of a financing statement.

■ O.R.C. § 1309.39(A) states, in part, that a "financing statement shall state the name of the debtor . . . [.]" No mention, however, is made in O.R.C. § 1309.39, or any other Ohio statute, that a financing statement must include a debtor's trade name. To the contrary, paragraph (F) of O.R.C. § 1309.39 specifically states that a "financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names . . . ." As a result, the existence or omission of a debtor's trade name on a financing statement does not render such a financing statement ineffective. The Trustee, however, while not disputing this precept, argues that when a creditor includes a debtor's trade name in a financing statement, that name must be listed correctly, otherwise the financial statement becomes misleading, and thus is ineffective under Ohio law.

■ Under Ohio law, errors that are present in a financing statement do not render the financing statement ineffective as long as such errors are not seriously misleading. Specifically, O.R.C. § 1309.39 states that, "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Although the term "seriously misleading," as used in § 1309.39(G), is not actually defined under Ohio law, it is clear that a financing statement which suffices to put subsequent creditors on notice of the prior security interest is not seriously misleading. Such a determination can be made by asking whether a reasonably prudent subsequent creditor would have discovered the financing statement. *See* 83 OHIO JUR.3d *Secured Transactions* § 236.

With this standard in mind, the Court comes to conclusion that the Bank's financing statement was not seriously misleading despite the reference in the financing statement to an improper trade name. In coming to this conclusion, the Court relies upon the fact that in Ohio financing statements are indexed according to a debtor's name. *Maurer v. Port Feed Mill, Inc.,* 71 Ohio App.3d 200, 205–06 593 N.E.2d 337, 340–41 (Ohio Ct.App.1991) (the name "Davis, Tom dba Port Feed Mill" is correctly indexed under "D," the first letter of Davis' name.) As a consequence, since the Bank's second financing statement correctly listed (and spelled) the Debtor's name, any reasonably prudent creditor searching the record for a security interests against the Debtor, Kathy L. Wisniewski, would have located the Bank's financing statement. Taking this a step further, the Court also observes that under Ohio law, a trade name, such as "d.b.a. Cherry Cheeks," does not create an entity distinct from the person operating the business. *Poss v. Morris,* 1996 WL 200614 *3 (Ohio App. 11th Dist.) (holding that an "individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations."). Thus any entity, examining the record to see if there existed a security interest in any collateral held by either one of the Debtor's businesses, would have simply been concerned with the Debtor's actual name and not any trade names under which the Debtor operated. *See Maurer,* 71 Ohio App.3d at 206.

Having thus disposed of the Trustee's first point of contention, the Court now turns to address the next two issues raised by the Trustee which are: (1) the Bank's financing statement failed to describe the nature of the business assets upon which it claimed a lien; and (2) the Bank's financing statement failed to generally describe the category of the assets upon which the Bank claimed a lien. As these two issues are essentially the same, the Court, for brevity sake, will discuss them together.

The operative Ohio statutory authority to determine whether a financing statement sufficiently describes the property to be collateralized is O.R.C. § 1309.39; this section provides, in relevant part, that a financing statement is sufficient if it "include[s] a statement indicating the types, or describing the items, of collateral." O.R.C. § 1309.39. The requirements of this section may be fulfilled in one of two ways: (1) The collateral may be described with sufficient particularity so that anyone reading the financing statement could identify the property from the description alone; or (2) the collateral may be described by reference to certain categories of property defined in the Code, examples of which include, "account," "general intangible," "equipment" and "farm products." *Matter of Binning*, 45 B.R. 9, 12 (Bankr.S.D.Ohio 1984). In this case, the Bank chose the later option, describing, in its financing statement, the collateral secured by its security agreement as "inventory, chattel paper, accounts, equipment, and general intangibles," the operative word, for purposes of this case, being "equipment."

The term equipment, as used in security agreements, is a catchall phrase for all business collateral that has not otherwise been classified. In particular, "equipment," under Ohio law, is defined as those goods which "are used or bought for use primarily in business, including farming or a profession, or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products, or consumer goods[.]" O.R.C. § 1309.07(B). The difficulty, however, with this definition is that instead of describing what type of goods are equipment, the definition contained in O.R.C. § 1309.07(B) simply reveals what type of goods do not constitute "equipment." Therefore, to determine whether goods used in a business are "equipment," it is useful to ask this question: are the goods fixed assets with a relatively long period of use or are the goods used up or consumed in a short period of time in the production of some end product. If the former, the goods are "equipment," if the latter the goods should be classified as "inventory." 83 OHIO JUR.3d *Secured Transactions* § 98. By way of example, the Official Comments to the Uniform Commercial Code state that machinery used in manufacturing is "equipment," notwithstanding the fact that it may be later sold. Official Comment 3 to UCC § 9–109 (O.R.C. § 1309.07). Similarly, company cars used by employees for company business are also "equipment." 83 OHIO JUR.3d *Secured Transactions* § 98. On the other hand, goods such as fuel, replacement parts and containers used to package goods are properly categorized as "inventory."

With these examples in mind, it is clear that, for purposes of this case, the collateral at issue in this case—i.e., the tanning beds, a computer and other miscellaneous items—all have the characteristics of equipment. In particular, the nature of the Debtor's businesses—a tanning salon and a travel agency—are not indicative of the type of businesses that would sell tanning beds and computers. As a result,

given the breadth afforded to the category "equipment," it is apparent that the Bank's collateral was, in fact, "equipment" as that term is utilized in Ohio secured transactions law. Accordingly, as the Bank's security agreement with the Debtor specifically encompassed "equipment," the Court must reject the Trustee's arguments concerning the insufficiency of the Bank's description of its collateral.

In summation, the Court finds that with respect to the Debtor's tanning beds, computer and other miscellaneous items, the financing statement the Bank executed in 1998 sufficiently complied with the requirements for a financing statement as set in O.R.C. § 1309.39. As such, the Trustee, in exercising his strong-arm powers under 11 U.S.C. § 544(a)(1), may not avoid the security interest the Bank maintains in these items. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the Motion for Summary Judgment submitted by the Trustee, John Hunter, be, and is hereby, DENIED.

It is *FURTHER ORDERED* that the Motion for Summary Judgment submitted by the Defendant, Key Bank National Association, be, and is hereby, GRANTED to the extent that it determines the validity of its perfected security interest in its collateral.

IT IS *FURTHER ORDERED* that the Motion for Summary Judgment submitted by the Debtor, Kathy Wisniewski, be, and is hereby, GRANTED to the extent that it determines the validity of the Bank's perfected security interest.

IT IS *FURTHER ORDERED* that the Trustee's Complaint to avoid the lien of the Defendant in tanning equipment, a computer and certain miscellaneous items, be, and is hereby, DISMISSED.

IT IS *FURTHER ORDERED* that all Parties shall bear their own costs and attorney fees.